159 N.J. Super. 465 (1978)
388 A.2d 626
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JEROME BENDER, R.P., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 17, 1978.
Decided May 9, 1978.
*466 Before Judges ALLCORN, HORN and FURMAN.
Mr. John J. Degnan, Attorney General, attorney for appellant (Mr. William F. Hyland, former Attorney General; Mr. Allan J. Nodes, Deputy Attorney General, of counsel and on the brief).
Mr. Raymond R. Trombadore & Mrs. Ann W. Trombadore, attorneys for respondent (Mr. Trombadore on the brief).
PER CURIAM.
This is an appeal by the State from an order entered by the trial judge admitting defendant to the Somerset County Pretrial Intervention Program (P.T.I. Program) on a finding following a hearing that the objection by the State was "patently and grossly arbitrary, unreasonable and capricious."[1]
*467 A state grand jury indictment charged defendant Jerome Bender with stealing narcotic drugs (cocaine), in violation of N.J.S.A. 2A:119-8.1 (count 1); possession of a controlled dangerous substance (cocaine), in violation of N.J.S.A. 24:21-20a(1) (Count 2); possession of a controlled dangerous substance (marijuana), in violation of N.J.S.A. 24:21-21a(3) (count 3); possession of a controlled dangerous substance (hashish), in violation of N.J.S.A. 24:21-20a(3) (count 4); possession of controlled dangerous substances (valium, ritalin, fiorinal, pentobarbital, phenobarbital and emperin with codeine), in violation of N.J.S.A. 24:21-20a(1) (count 5); possession of controlled dangerous substances not in the original container (valium, ritalin, fiorinal, pentobarbital and emperin with codeine), contrary to N.J.S.A. 24:21-18 (count 6), and refusal and failure to keep records under the Controlled Substances Act, contrary to N.J.S.A. 24:21-21a(4). 24:21-13 and 24:21-9 (count 7). Pursuant to an agreement between defendant and the State, and before Somerset County had a P.T.I. Program, defendant entered a plea of guilty on November 15, 1976 to count 1, charging stealing of a narcotic drug, to wit, cocaine, between January 1, 1972 and on or about December 10, 1975. Counts 2 through 7 subsequently were dismissed. Additionally, the State recommended a noncustodial sentence.
On or about January 14, 1977, after the P.T.I. Program was adopted for the county, defendant applied for admission into it. The Attorney General opposed the application. On or about March 30, 1977 the Program Coordinator notified defendant of his rejection as a participant in the Program. Defendant then filed a motion in the Somerset County Court seeking review of the denial of his application for admission to the Program. The judge made the challenged ruling following a hearing on the motion.
This is indeed a sorry case and invokes great sympathy. Defendant presently is 42 years old. He was licensed to practice pharmacy in 1960, from which time he was employed as pharmacist-in-charge at a drugstore in Somerville. *468 He was married in 1960 and is the father of two children, ages 10 and 13. Until the episodes in question he had no criminal record. Commencing in 1972 he began to use cocaine diverted from the stocks of the store of his employer where he was working, and he became dependent upon its use. In addition, he commenced to consume large quantities of alcohol daily. His use of cocaine by inhalation caused physical damages to him  a perforation of his palate as well as destruction of tissue in his nasal passages. When confronted with charges that he was using drugs, he readily admitted his drug and alcohol abuse, and immediately sought medical and rehabilitory assistance. He resided in a drug clinic for approximately six weeks and, when discharged, he cooperated in out-patient drug programs. Thereafter he participated as a member of the advisory board of an addiction-recovery unit of an organization of the county.
He has since been divorced and has been able to make restitution for the cocaine which he had misappropriated. He voluntarily ceased practicing pharmacy and has not been suspended. His rehabilitation is attested by numerous letters from those who have been in a position to observe him socially, professionally and through business relationships. Counsel advised the court that his former employer has offered to restore him to his prior position as a pharmacist in their store, but that he has advised defendant against accepting that offer pending disposition of this and certain other problems.
The State opposed defendant's application for the following reasons:
A. The course of conduct described in Count I was a continuing criminal business or enterprise. [P.T.I. Guideline 3 (i) (2)] The defendant systematically used Schedule II order forms to obtain narcotics over a four year period.
B. The conduct pursued by the Defendant-Bender, a licensed pharmacist, is a breach of public trust where admission to a P.T.I. program would depreciate [sic, deprecate] the seriousness of the defendant's crime. [P.T.I. Guideline 3(i) (4)] Admission to P.T.I. may result in the return of his pharmacy license.
*469 In concluding that the Attorney General had abused his discretion in opposing intervention, the trial judge commented on the apparently successful efforts of defendant in rehabilitating himself. He rejected the above-stated reason, A, as being erroneous because he did not consider that defendant's course of conduct was a "continuing criminal business or enterprise" since he stole the drugs for his personal use. He rejected the above-stated reason, B, on the ground that as a pharmacist defendant was not a public officer and did not breach a public trust. Further, he expressed his feeling "that to allow this rejection to continue would be a violation of the whole purpose of pretrial intervention."
Notwithstanding the fact that we share the trial judge's obvious sympathy for defendant, and also that we recognize that defendant has made great strides in restoring himself, we are constrained to disagree with his decision, primarily because we do not share his view as to the governing legal principles.
We need not assess the judge's view of the Attorney General's reason, A, as being correct or not, because we are satisfied that the judge erred in declaring that defendant's conduct in purloining the cocaine was not a breach of a public trust. In issuing a license the State entrusts a pharmacist to dispense controlled dangerous substances. N.J.S.A. 24:21-1 et seq. In effect, the State relies upon him to do so only pursuant to law. Cf. N.J.S.A. 45:1-13. See also, N.J.S.A. 45:14-7. In a broad sense, it entrusts pharmacists with furthering public health and welfare in their professional obligations. See Supermarkets Gen'l Corp. v. Sills, 93 N.J. Super. 326 (Ch. Div. 1966). Guideline 3(i) provides that a defendant's application to participate in a Program should generally be rejected if the crime was "(4) a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime * * *."
As enunciated in State v. Leonardis, 73 N.J. 360, 381 (1977) (Leonardis II), "great" deference should be given *470 to the prosecutor's determination not to consent to diversion and his determination not to consent should be sustained unless there is a showing of "patent and gross abuse of discretion." Here there was a violation of the public trust by defendant, which violation was in the form of a series of misappropriations of a controlled dangerous substance over an interval of four years. Cf. State v. Markt, 156 N.J. Super. 486 (App. Div. 1978). Its termination and defendant's criminal activities came to light only at the instance of a third party or parties. Surely within that four years defendant must have realized the import of his activities, but nonetheless he failed to act upon such realization. We must uphold the Attorney General's decision in such a case as this, where he fears that if defendant is permitted to receive the benefits of the Program it will deprecate the seriousness of the crime. This consideration leads us to conclude that this is not one of the rare cases where the Attorney General's decision should be overturned. Leonardis II, supra, 73 N.J. at 380, n. 10. See also State v. Barrett, 157 N.J. Super. 96 (App. Div. 1978); State v. Markt, supra; State v. Litton, 155 N.J. Super. 207 (App. Div. 1977).
As noted in State v. Litton, supra, at 212, judicial review of the prosecutor's, or as in the case at bar, the Attorney General's decision is narrowly limited. The purpose of the review is to allow a defendant to demonstrate an abuse of discretion by the prosecutor. We are constrained to hold that in this case defendant did not sustain the heavy burden of demonstrating clearly and convincingly that the Attorney General's refusal to consent was patently and grossly an abuse of discretion. State v. Litton, supra at 212. Accordingly, the order under appeal is reversed.
FURMAN, J.S.C. (temporarily assigned), dissenting.
Defendant applied for admission to the Pretrial Intervention Program on January 14, 1977 within a few weeks after the program was put into effect in Somerset County in December 1976. He had pleaded guilty on November 15, 1976 to *471 the first count of a seven-count indictment for drug related offenses. As a result of plea bargaining the State agreed to dismiss the six other counts. The first count charged defendant, a licensed pharmacist, with stealing cocaine from his employer Wald Drugs over a nearly four-year period from 1972 until late 1975. Defendant's application for admission to PTI was approved by the PTI Program Director and opposed by the Attorney General.
Judge Meredith concluded after hearing argument and reviewing the record that defendant had established, in accordance with the standard in State v. Leonardis, 73 N.J. 360, 383 (1977), that the prosecutorial veto was a patent and gross abuse of discretion and grossly arbitrary or capricious. The Attorney General took the position, which he maintains on his appeal, that defendant should not be admitted to PTI because his crime was "part of a continuing criminal business or enterprise" (PTI Guideline 3(i)(2)) and "a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime" (PTI Guideline 3(i)(4)).
Since the disclosure of his cocaine habit and alcoholism in late 1975 defendant had made impressive progress towards rehabilitation at the time of the hearing before Judge Meredith. He had not taken cocaine or alcohol for over a year. Employed outside the pharmacy field in a plastics factory he had gained promotions from manual labor to office manager. He had made total restitution to his former employer Wald Drugs for the cocaine he stole. Viewing defendant's application for admission to PTI subjectively, he was a prime candidate under the Leonardis II tests. His prospects for rehabilitation were excellent. There was a probability that a criminal prosecution would have been counterproductive. No peril to the public was evident and no threat of future criminal activity by defendant against which a criminal prosecution would have been a deterrence.
The Attorney General nevertheless viewed as overriding the objections that (1) defendant was a licensed pharmacist *472 who owed a public trust arising out of his license from the State and (2) had stolen cocaine for nearly four years, systematically drawing up federal order forms for new supplies of cocaine.
Defendant's pitiful crime was victimless. He was a first offender. He diverted cocaine for his own use only. There is no showing that he failed in the performance of any duty as a pharmacist.
Guidelines 3(i)(2) and (4) are not rigid. Guideline 3(i) specifies that applicants who fit within (2) or (4) should "generally" be rejected. In my view defendant's crime was not a criminal "business or enterprise", that is, a systematic crime for profit. Thus Guideline 3(i) (2) is inapplicable. He was guilty of a breach of public trust as a licensed pharmacist only in the sense that his crime was made possible by his employment in that capacity, but without injury to the public generally or to any member of it outside himself and his family.
Although the burden in Leonardis II is a heavy one I must conclude that burden was met, that it was patently contrary to the intent and spirit of PTI to deny admission to defendant and patently an abuse of discretion and arbitrary to bar him under the only applicable guideline, breach of public trust, in view of all the circumstances.
I would affirm.
NOTES
[1] The State moved before us for leave to appeal. We granted it primarily because we conceived that the order was a final one and was appealable as of right. R. 2:2-3(a)(1).