STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JON MADDOCKS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 15, 1978—Decided July 3, 1978.

Before Judges MICHELS, PRESSLER and BILDER.

*Mr. William W. Graham* argued the cause for appellant (*Messrs. Mirne, Nowels, Tumen, Magee, Kirschner* and *Graham,* attorneys).

*Mr. Leo P. Cox,* Assistant Prosecutor, argued the cause for respondent (*Mr. Clinton E. Cronin,* Acting Monmouth County Prosecutor, attorney).

The opinion of the court was delivered by

BILDER, J. S. C. (temporarily assigned). This is an appeal on leave granted from a denial of enrollment in the Monmouth County Pretrial Intervention Program.

Defendant Jon Maddocks is charged with breaking and entering with intent to steal. More specifically, it is alleged that in the early morning hours of June 20, 1977 he broke into a luncheonette on the Belmar boardwalk and stole 11 packages of cigarettes, two bags of popcorn, a candy bar, and approximately $3 which was taken from the cash register. He was arrested moments later in an intoxicated condition. Application for enrollment in the Monmouth County Pretrial Intervention Program was duly made and he was accepted, subject to the consent of the Monmouth County Prosecutor, which was denied.

Defendant is 18 years old. The alleged offense occurred approximately one month after his 18th birthday. He has no prior criminal record.[1] He is employed and apparently living at home with his parents.

In accepting defendant into the Pretrial Intervention Program, the project director noted defendant's possible problem with alcohol and proposed an alcohol evaluation at the Jersey Shore Mental Health Clinic with treatment to follow as indicated. He also noted that defendant had left high school before graduation and caused the defendant to enroll at the Asbury Park Learning Center for the completion of his education.

The prosecutor has objected to the defendant's admission into the Program for two reasons. First, defendant has failed to furnish the name of the individual who participated with him in the breaking and entering, and second, "contact

---

[1] Defendant was at one time charged with larceny of a motorcycle. This juvenile charge was continued and never acted upon. As a matter of due process, defendant must be considered to have been not guilty of that charge. See *In re Winship*, 397 *U. S.* 358, 90 *S. Ct.* 1068, 25 *L. Ed.* 2d 368 (1969).

with the Belmar Police indicates that Maddocks had been on the periphey [sic] of other criminal [sic] investigations."

■ We recognize the heavy burden which defendant bears in overcoming the propriety of the prosecutor's actions. He must show "compelling reasons justifying his admission *and* establishing that a decision against enrollment would be arbitrary and unreasonable". *State v. Litton,* 155 *N. J. Super.* 207, 218 (App. Div. 1977). It is appropriate, therefore, to examine the prosecutor's reasons in the context of that heavy burden.

■ As noted, the prosecutor has expressed an understandable concern about the failure of defendant to cooperate with respect to the identity of his accomplice. Defendant, by his attorney, has made clear his willingness to furnish the name of his accomplice and, indeed, to testify against him if he is insulated by admission into the Pretrial Intervention Program from the use of that accomplice's testimony in a trial against him. His position, taken on the advice of counsel, was, under the specific circumstances here, a reasonable one and should not have affected his admission into the Program.

The second reason given by the prosecutor amounted to no more than guilt by association with respect to unknown people and unknown acts of an unspecified nature.

At the hearing on defendant's appeal the prosecutor expanded his reasons with the following statement to the trial court:

The denial was based upon my judgment that because of the nature of the offense, the conduct of this individual after his arrest in that he didn't fully cooperate with the police, and the fact that I was informed by the officers of information surrendering [sic] other possible criminal conduct activity of this individual, that he doesn't have an attitude that is going to be amenable to the rehabilitative facilities that we have in the pretrial intervention program.

The reasons given by the prosecutor in court are essentially the same as contained in his disapproval, with one added element — the nature of the offense. This is a case of an

18-year-old drunk who has broken into a luncheonette and stolen, as noted, eleven packages of cigarettes, two bags of popcorn, a candy bar and $3. Given a past good record, present employment, a demonstration of a willingness to pursue the rehabilitative suggestions of the Pretrial Intervention Program and the evaluation of the Pretrial Intervention Program director, it is difficult to characterize "the nature of the offense" as anything more than youthful folly.

As noted in *State v. Litton,* the Chief Justice (in a speech to the Legislature) has said that "the prosecutor has virtually untrammelled authority, essentially a veto power — except in cases of arbitrary abuse." *Id.* at 212–213. Where such abuse exists, the courts have the power to correct it. *State v. Leonardis,* 73 *N. J.* 360, 376 (1977) (*Leonardis* II). We find the instant case to be one of arbitrary abuse, of gross and patent abuse, and remand for enrollment in the Pretrial Intervention Program, subject of course to the condition that the defendant live up to his promise to furnish the name of his accomplice and cooperate with the authorities.

The order denying admission into the Pretrial Intervention Program is reversed and the matter remanded for further proceedings in accordance with this opinion.

MICHELS, J. A. D. (dissenting). I disagree with the majority decision because I am satisfied from my study of the record as a whole that the prosecutor's refusal to sanction defendant's admission into the Monmouth County Pretrial Intervention Program was not based on a patent and gross abuse of his discretion.

A defendant's application for admission to a diversionary program must be measured in the light of many factors, including his potential responsiveness to rehabilitation, and the nature of the offense—not on the basis of a bargain that a defendant will divulge information concerning the facts

surrounding the offense if granted diversionary treatment. See "Guidelines For Operation of Pretrial Intervention In New Jersey," 99 *N. J. L. J.*, Page 865 (1976). Here, defendant's refusal to cooperate with the law enforcement authorities pending acceptance into the Pretrial Intervention Program clearly evidences an unresponsiveness to rehabilitation, and thus furnished a sound basis for the prosecutor to reasonably conclude that "defendant's attitude would render pretrial intervention ineffective." Pretrial Intervention Guideline 4.

Furthermore, I would not place the court's imprimatur on a bargain for admission into a Pretrial Intervention Program. Such conduct will not further the salutary objectives and purposes of our diversionary program.

Finally, I do not agree with the characterization of the alleged crime committed by defendant as "anything more than youthful folly." On the contrary, breaking and entering with intent to steal is a high misdemeanor under *N. J. S. A.* 2A:94-1. The prosecutor properly considered the serious nature of this crime together with other relevant factors in finding defendant disqualified for diversionary treatment.

We must remember that in *State v. Leonardis,* 73 *N. J.* 360, 381 (1977) (*Leonardis II*), our Supreme Court held that the scope of judicial review in pretrial intervention matters "should be limited":

> [T]he decision should lie, in the first instance, with the program director and prosecutor. * * * Accordingly, great deference should be given to the prosecutor's determination not to consent to diversion.

The Supreme Court further held:

> Except where there is such a showing of patent and gross abuse of discretion by the prosecutor, the designated judge is authorized under *R.* 3:28 to postpone proceedings against a defendant only where the defendant has been recommended for the program by the program director and with the consent of the prosecutor. *R.* 3:28(b). By emphasizing prosecutorial discretion we ensure that PTI will ful-

fill one of the motivating forces behind the program: the "need for prosecutorial options to augment those traditionally exercised by law enforcement authorities." [at 381]

The Supreme Court made it clear that Pretrial Intervention Guideline 8 should be read *in pari materia* with Guidelines 2 and 3(i), further emphasizing that

* * * [T]hese guidelines should be interpreted to require that the defendant clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program *was based on a patent and gross abuse of his discretion.*
* * * Guideline 3(i) provides that any defendant charged with a crime is eligible for enrollment in a PTI program. In other words, every defendant is entitled to consideration. However, *the prosecutor's refusal to consent or the court's denial of a diversion order may, where appropriate, be based solely on the nature of the offense charged.* [at 382; emphasis supplied]

See also, *State v. Barrett,* 157 *N. J. Super.* 96, 101 (App. Div. 1978).

Thus, I am convinced that defendant has not sustained his burden of establishing clearly and convincingly that the prosecutor's failure to sanction his admission into the Monmouth County Pretrial Intervention Program was a patent and gross abuse of discretion. Accordingly, I would affirm the order of the Law Division sustaining the prosecutor's action in this case.