155 N.J. Super. 207 (1977)
382 A.2d 664
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
GARFIELD LITTON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 18, 1977.
Decided December 20, 1977.
*209 Before Judges MATTHEWS, CRANE and ANTELL.
*210 Mr. Roger W. Breslin, Jr., Bergen County Prosecutor, attorney for appellant (Mr. J. Dennis Kohler, Assistant Prosecutor, of counsel; Ms. Elaine C. Major, on the brief).
Mr. Stewart Gitlin, attorney for respondent (Mr. Richard A. Fazzari on the brief).
The opinion of the court was delivered by ANTELL, J.A.D.
On August 13, 1975 defendant was charged in municipal court with open lewdness, N.J.S.A. 2A:115-1. His application for admission into the Bergen County Pretrial Intervention Program (hereinafter PTI) was denied by the program director on October 16, 1975 based upon the prosecutor's objection. Defendant thereafter moved for an order of admission into the program and the prosecutor furnished his statement of reasons on September 23, 1976. After a hearing on September 24, 1976 defendant's motion was granted. By our leave the prosecutor appeals.
The factual content of the prosecutor's investigation was substantially undisputed. His anticipated proofs are that defendant followed D.B., with whom he was unacquainted, to her home and parked across the street. She went inside briefly and when she came out observed that defendant was still there. A few minutes passed before he drove on to her driveway. She walked to his car, asked whether he needed directions, and it was while they were talking that he opened his clothing and exposed his genitals. She ordered him away and he left.
During the interval when D.B. was in her home J.S., a young woman who lived across the street, saw defendant apparently masturbating in his car.
Defendant is a 35-year-old married man who operates his own commercial design business in New York City and has no previous criminal history. He explains that he had developed a dependency on alcohol from business-related pressures and that at the time of the crime he was under further stress resulting from his wife's pregnancy and the fact of *211 her previous miscarriage. The incident is attributed by him to his intoxicated condition. He is now the father of a baby girl and is willing "to enter any program, cooperate and follow any course that might be established by the pre-trial intervention program."
Defendant was voluntarily examined at the Adult Diagnostic and Treatment Center in Avenel on February 27, 1976. The report of the examining phychiatrist revealed no evidence "of neurosis or psychosis, or serious underlying personality deficits." The examiner reported that defendant was not in need of psychiatric assistance "and most likely learned a great deal from his experience." He also opined that defendant "will not be prone to recurrences of similar behavior if able to abstain from periodic excessive drinking." Defendant's Shipley-Hartford Verbal I.Q. Equivalent Score was placed at 127 and his Abstraction Score was placed at 131. Therefore he functions intellectually at a level described as "superior." It was noted in the report that he "might benefit from involvement in therapy on an out-patient basis to help avoid future difficulties."
The vital questions presented on this appeal concern the scope of judicial review of prosecutorial action by which applications for admission into PTI are rejected. In assessing the action of the trial judge in ordering defendant admitted into the program over the prosecutor's objection we take our guidance from the Supreme Court Guidelines promulgated on September 8, 1976, 99 N.J.L.J. Index Page 865, State v. Leonardis, 71 N.J. 85 (1976) (Leonardis I), and State v. Leonardis, 73 N.J. 360 (1977) (Leonardis II), the last of which was decided some eight months after the order under review.
The function of pretrial intervention is to divert from the criminal justice system appropriate defendants who can benefit from "early rehabilitative services." Diversion is allowed only "with the consent of the prosecuting attorney." R. 3:28; Leonardis II, supra at 381. All classes of offenders are eligible for consideration and the emphasis is upon the *212 offender's potential for rehabilitation,  not the offense with which he is charged. Leonardis I, supra 71 N.J. at 112; Guideline 2. The decision as to whether an applicant shall be admitted into the program must in the first instance be made by the program director and the prosecutor, but their decisions are subject to review. Leonardis II, supra 73 N.J. at 381. Where admission is denied a statement of reasons may be required. Leonardis I, supra 71 N.J. at 119.
The program is a cooperative undertaking among the branches of government, Leonardis II, supra 73 N.J. at 372, involving the "exercise of quasi-judicial power" Leonardis II, supra at 379, and lies "[w]ithin a wholly judicial sphere," Leonardis I, supra 71 N.J. at 115. Court review of the prosecutor's decision is narrowly limited. Its purpose is to allow a defendant to demonstrate an abuse of discretion by the prosecutor. Leonardis II, supra 73 N.J. at 383. The proceeding is likened to an action in lieu of prerogative writs, Leonardis II, supra at 377, n. 7, based on the record below, State v. White, 145 N.J. Super. 257, 260 (Law Div. 1976). To prevail, the defendant has the "heavy burden," Leonardis II, supra 73 N.J. at 381, to show "clearly and convincingly" "compelling reasons justifying his admission" and that the prosecutor "acted in a grossly arbitrary or capricious manner," Leonardis II, supra at 382, 383, amounting to "a patent and gross abuse of his discretion." Leonardis II, supra at 382; Guidelines 2, 3(i), 8. In reviewing the record "great deference" should be given the prosecutor's judgment. Leonardis II, supra at 381. His refusal to consent may, "where appropriate" be based solely on the nature of the offense charged and it is expected that his decision "rarely will be overturned." Leonardis II, supra at 380 n. 10, 382. Review is available "to check only the most egregious examples of injustice and unfairness." Leonardis II, supra at 384.
In giving recent assurance that PTI neither endangers the public security nor encroaches upon executive powers, Chief Justice Hughes particularly noted that in supervising *213 access to this "highly selective" program "the prosecutor has virtually untrammelled authority, essentially a veto power  except in case of arbitrary abuse." State of the Judiciary Address To the Legislature, November 21, 1977, at 20. Hence the program is viewed as a response to the "need for prosecutorial options to augment those traditionally exercised by law enforcement authorities." Leonardis I, supra 71 N.J. at 93.
The reasons given by the prosecutor in support of his objection in this case are the following:
1. There is a compelling societal interest in pursuing sex offense crimes through the criminal justice system.
2. The psychiatric report indicates a finding of "No evidence of neurosis psychosis or underlying personality deficits." It is further reported that there is no need for psychiatric assistance for Mr. Litton. Accordingly, there is no evident benefit to be derived from diverting Mr. Litton from the normal criminal process to the Pre-Trial Intervention Program.
3. There is indication that alcohol may have played a vital role in contributing to the commission of the offense involved. Alcohol rehabilitation is available as a sentencing alternative through the imposition of a probationary term to those who are prosecuted or convicted. Therefore, there is no program peculiar to the Pre-Trial Intervention Program that is not otherwise available to this offender through the exercise of criminal sanction prerogatives.
4. There is a contradiction in Mr. Little's [sic] claiming alcohol amnesia, yet rationalizing the alleged behavior in his statement to the police.
5. The Bergen County Prosecutor's Office deems itself responsible to prosecute the underlying complaints pursuant to its statutory law enforcement obligations.
In ordering defendant's admission into the Pretrial Intervention Program the trial judge said only that the prosecutor's position was "arbitrary and unreasonable" in that there was "no reason for withholding consent in this case." At the outset, we find error in the implication that the prosecutor was called upon to justify his action and that in the absence of good reason to the contrary PTI should be ordered. As we have said, the affirmative burden of showing not only *214 the prosecutor's arbitrariness but also "compelling reasons justifying his admission" rests on defendant.
Having in mind that PTI numbers among its goals that of relieving defendants from the burden of "ordinary prosecution", Guideline 1(a), the fact that the same rehabilitative services are available within the criminal justice system as in PTI is in no way pertinent to their candidacy for admission into the program. We further observe that reasons 1 and 5 would neither jointly nor separately suffice to save the prosecutor's decision from a finding of capriciousness. Reason 1 violates the prohibition of Leonardis I upon absolute exclusionary criteria and number 5 is only a conclusionary expression of the prosecutor's position. Nevertheless, we conclude that defendant has not met his extraordinary burden of proof.
Representing an equal and coordinate branch of government, the prosecutor is charged with the duty of prosecuting conduct declared punishable by the Legislature. State v. Winne, 12 N.J. 152, 167, 174 (1953). In this case he has given reasons for withholding consent to diversion of defendant from the criminal justice system, and while they appear sketchy and simplistic they do not reveal indifference to the animating philosophy of the program. In concluding as we do that he acted within his discretionary powers we have taken into account policy considerations and realities inherent to the selection process upon which we will briefly comment.
It is true that the focus of the prosecutor's evaluation must rest initially upon the objective information furnished about the candidate and his potential for rehabilitation. But we do not believe that such finite data about a person's makeup which, as a practical matter, will be of the same general character in large numbers of cases, are intended alone to determine the candidate's acceptability. From the sweeping recognition given the prosecutor's discretion in Leonardis II it is clear that influences of a highly subjective nature also enter significantly into the procedure, and the dynamics of *215 selection are therefore keyed to many variables. In some cases, for example, these may include elements no less nebulous than the prosecutor's intuitive appraisal of an applicant's sincerity, so long, of course, as he states what it is about the facts and circumstances that draws his reaction. Other elements may involve the prosecutor's willingness to experiment. He may wish to do so with one offender but, until results are in, not with another. Or subtle personality features may stamp one candidate as being a better gamble than another. Obviously, such decisions may be influenced by speculative factors or even the fact that one philosophy of law enforcement or corrections happens to be favored over another.
Nor can we discount the prosecutor's responsiveness to the prevailing level of local public anxiety over certain forms of misconduct and its proper effect upon him in choosing between the goals of public deterrence and the least burdensome form of rehabilitation for the offender.
Although the prosecutor brings to this undertaking the learning, the experience, the analytic skills and the insights bred from day-to-day involvement in the work of law enforcement, the operative chemistry rarely lends itself to detailed rationalization. It follows, therefore, that different results will sometimes be reached on superficially similar facts from case to case and the appearance of arbitrariness will occur because well articulated reasons are not given. While this seeming disparity is of no small importance, the fact is that the program calls upon the prosecutor to make judgments incorporating the most hazardous predictions of human behavior, and his mere lack of fluency should not operate to deprive the selection process of his expertise. In so saying, we do not overlook the risk that an obscure and nonspecific statement of reasons may well serve as a cover for sheer whimsicality. However, until reason to the contrary appears, reviewing courts should weigh heavily the probability that in the actual screening of applicants the prosecutor's built-in mechanisms for the processing of information were *216 effectively at work and that his determinations as to which candidates may with safety be diverted from the criminal justice system are based upon real and valid differences between the candidates, even though imperfectly expressed. In short, his statement of reasons should be read liberally and in depth.
While the prosecutor's treatment of this defendant's application reflects an unmistakably conservative approach, absent clear obstructionism or the giving of reasons totally unrelated to the goals of PTI and the legitimate needs of law enforcement, the spirit of reserved and skeptical appraisal is not inappropriate at this still formative time in the life of the program. It is well to remember that a serious miscalculation can seriously impair needed public confidence in this worthwhile project which, after all, bears the emblems of judicial sponsorship. Judgments can always be revised in the light of later experience. Time will allow for patient trial and error and for an enlightening, cooperative interaction between the Judicial and Executive Branches. And it is in this interaction that we see the program's promise for healthy development and its safeguard against the tyranny of static criteria.
We find here that the prosecutor's position is at least arguably related to the Guidelines and therefore satisfies the requirements of Leonardis I and II. In their collective intent, as supplemented by the prosecutor's statments before the trial court, his reasons amount to an expression of concern that this offense, based on the expected evidence, was not free of the threat of violence. As he said, "hardly anything is known about sex offense crimes." Indeed, even though no physical contact occurred between defendant and the complaining witness, we are unable to say that this offense did not arise from distinctly assaultive motivations. Guideline 3(i)(3) recommends rejection of the application under those circumstances. We regard this as being a case where it was "appropriate" for the prosecutor to base his rejection on the nature of the offense. Although it is often said that the *217 typical sexual exhibitionist is not prone to violence, the question is not free of controversy. Rooth, "Exhibitionism, Sexual Violence and Paedophilia," 122 British J. of Psychiatry 705 (June 1973).
The reasons also cite the emphasis of the psychiatric report upon the fact that defendant's behavior is free of any neurotic or phychotic component and that he has "no need for psychiatric assistance." Since defendant's behavior is volitional, the product of a normal psyche free of compulsive influences, the prosecutor reasons that he should be dealt with by the more punitive measures which are a part of the ordinary correctional processes and as such compatible with the aim of rehabilitation. In re Buehrer, 50 N.J. 501, 509 (1967).
Under these circumstances, admitting defendant into the program would be an empty gesture and serve no purpose other than to deprecate the seriousness of the offense. Retaining the matter in the criminal justice system, the prosecutor's argument continues, would at least provide the State with some means of deterring future acts of misconduct.
We borrow from the following statement of principle by the Supreme Court in Flanagan v. Civil Service Dep't, 29 N.J. 1 (1959):
If there is any fair argument in support of the course taken or any reasonable ground for difference of opinion among intelligent and conscientious officials, the decision is conclusively legislative, and will not be disturbed unless patently corrupt, arbitrary or illegal. Doubts held by the court as to the wisdom of the administrator's decision do not alter the case. [at 12]
Although all reasonable people may not agree with the merits of the prosecutor's position, it is not irrational and it bears the imprimatur of the Executive Branch of government. The trial court should therefore have given greater deference to his views and concluded that his refusal to consent to defendant's admission into the program was not *218 clearly and convincingly shown by defendant to be grossly arbitrary and capricious.
The occasion is appropriate for us to emphasize the critical importance of fully developed and precisely stated findings and conclusions in deciding motions for admission into PTI. These should at least include the facts upon which the application is based, the reasons offered by the prosecutor for withholding consent, the factual basis for the prosecutor's reasons, the evidential foundation therefor, the reasoning process, the standards applied, and the factors considered by the court in concluding that the prosecutor's action is or is not grossly arbitrary under governing standards. See Application of Howard Savings Inst. of Newark, 32 N.J. 29, 52 (1960); In re Application of Union Community Bank, 144 N.J. Super. 39, 46 (App. Div. 1976). It should also be noted that the ultimate question for determination is whether defendant has shown "compelling reasons justifying his admission and establishing that a decision against enrollment would be arbitrary and unreasonable." (Emphasis added.) The sufficiency of the prosecutor's reasons or lack thereof is only one of the factors entering into this dual determination.
Reversed.