157 N.J. Super. 96 (1978)
384 A.2d 558
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOSEPH BARRETT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 31, 1977.
Decided February 28, 1978.
*98 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. William F. Hyland, Attorney General of New Jersey, attorney for appellant (Mr. Daniel A. Swick, Deputy Attorney General, of counsel and on the brief).
Messrs. Pellettieri and Rabstein, attorneys for respondent (Mr. Daniel Graziano, Jr., of counsel and on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Pursuant to leave of this court, the State appeals from an order granting defendant admission to the Mercer County Pretrial Intervention Program over the objection of the Attorney General of New Jersey who prosecuted the matter.
The State Grand Jury returned an indictment charging defendant, in six counts, with acting as an unregistered securities broker in violation of N.J.S.A. 49:3-56(a) and N.J.S.A. 49:3-70(a), and with making false statements in connection with the sale of securities in violation of N.J.S.A. 49:3-52(b) and N.J.S.A. 49:3-70(a). The indictment contained 51 other counts and dealt with four other codefendants. All parties were involved in the affairs of Anchor Finance Company (Anchor Finance). Additionally, *99 three of these codefendants were charged with conspiracy, although defendant was not.
Defendant was president of Anchor Finance from January 1970 until May 1973. He resigned as a member of the board of directors in August 1973. Anchor Finance was solvent when defendant assumed the presidency, and it became insolvent during his tenure of office. He was also a stockholder of the company from its inception in 1962 until December 1974 when the Division of Criminal Justice began its investigation after Anchor was placed in receivership. Anchor Finance is alleged to have sold securities without registering them with the Bureau of Securities in violation of N.J.S.A. 49:3-60. Furthermore, these securities were sold through individuals who were not duly registered as brokers or agents in violation of N.J.S.A. 49:3-56(a) and N.J.S.A. 49:3-56(b). In March 1975 the State, as part of its investigation, sent questionnaires to Anchor Finance investors and 12% of those responding stated that defendant was involved in their purchase of Anchor Finance securities. Thereafter, the State Grand Jury returned the indictment against defendant and the four others.
Following the decision of the Supreme Court in State v. Leonardis, 71 N.J. 85 (1976) (Leonardis I), defendant applied for admission into the Mercer County Pretrial Intervention Program. The application was denied by the Program Director based upon the Attorney General's objection. The Attorney General opposed defendant's admission to the program for the following reasons:
1. Mr. Barrett's involvement with the Anchor Finance Company was part of an organized criminal activity. More specifically, Mr. Barrett is charged with acting in the capacity of a registered securities agent, broker, dealer or investment advisor contrary to N.J.S. 49:3-56(a) for a three year period beginning January 1, 1971, and ending January 1, 1974. During this period it is alleged that Mr. Barrett engaged in deceptive practice involving the sale of Anchor Finance Company securities to members of the public. It would appear that Mr. Barrett's alleged criminal *100 activities were the product of deliberation as opposed to a solitary incident of unreflected spontaneity. See PTI Guideline 3(i)(1).
2. For the same reasons as stated above, it appears that Mr. Barrett's actions were but part of a continuing criminal business or enterprise. See PTI Guideline 3(i)(2). The overall indictment naming five (5) separate defendants show that the Anchor Finance Company, its principals and operative continued to defraud the public for the period of several years.
3. For years, the Anchor Finance Company held itself out as being licensed by the New Jersey Bureau of Securities. Due to this misrepresentation as to State governmental supervision, at least in part, the Anchor Finance Company debenture bond holders were influenced to reinvest their funds.
4. In that Mr. Barrett had been the President of the Anchor Finance Company for approximately two (2) years, his admission to the program can conceivably effect those trials concerning the other four (4) named defendants. The files indicate that the individual who succeeded Barrett to the position of President already claims that Barrett was the individual responsible for the poor financial condition of the Anchor Finance Company. The successor maintains that he was merely trying to correct the adverse position of that corporation. For this and other reasons, it appears that PTI Guideline 3(J) would not support Mr. Barrett's application to the program.
Defendant moved for a court order admitting him into the PTI program. On February 16, 1977, following a hearing on the motion the assignment judge wrote to counsel for defendant informing him that he found "that the action of the Deputy Attorney General in rejecting this application is unreasonable" and directed the program coordinator to process defendant's application for entry into the program. In reaching this result the assignment judge found that defendant was not charged with being involved in the conspiracy with three of the other indicted codefendants, that "the type of activity this defendant allegedly engaged in is not the type of criminal activity encompassed by these guidelines," and that Guideline 3(j), (effect on prosecution of other defendants) should not be considered "such a determinative factor as to preclude someone otherwise eligible from entering the program."
*101 On May 31, 1977 the Supreme Court filed its opinion in State v. Leonardis, 73 N.J. 360 (1977) (Leonardis II), holding that the scope of judicial review in pretrial intervention matters "should be limited." "[T]he decision should lie, in the first instance, with the program director and prosecutor." "Accordingly, great deference should be given to the prosecutor's determination not to consent to diversion." Id. at 381.
Except where there is such a showing of patent and gross abuse of discretion by the prosecutor, the designated judge is authorized under R. 3:28 to postpone proceedings against a defendant only where the defendant has been recommended for the program by the program director and with the consent of the prosecutor. R. 3:28(b). By emphasizing prosecutorial discretion we ensure that PTI will fulfill one of the motivating forces behind the program: the "need for prosecutorial options to augment those traditionally exercised by law enforcement authorities." [73 N.J. at 381]
The court made it clear that Pretrial Intervention Guideline 8 should be read in pari materia with Guidelines 2 and 3(i) and further emphasized that
[T]hese guidelines should be interpreted to require that the defendant clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of his discretion.
* * * Guideline 3(i) provides that any defendant charged with a crime is eligible for enrollment in a PTI program. In other words, every defendant is entitled to consideration. However, the prosecutor's refusal to consent or the court's denial of a diversion order may, where appropriate, be based solely on the nature of the offense charged. [at 382; emphasis supplied]
"Under the general rule that the status of the law in effect at the time of the disposition of a cause by an appellate court governs," S & L Associates, Inc. v. Washington Tp., 35 N.J. 224, 227 (1961), the clarified standards governing judicial review of PTI matters, as announced in Leonardis II, should be applied in determining defendant's motion for enrollment into the Mercer County Pretrial Intervention *102 Program. State v. Kirchdoerffer, 156 N.J. Super. 172 (App. Div. 1978) (decided January 9, 1978). See State v. Litton, 155 N.J. Super. 207 (App. Div. 1977).
We are firmly convinced that the assignment judge erred in admitting defendant to the PTI Program over the Attorney General's objection. The Attorney General's refusal to sanction defendant's admission into the program was clearly "not based on a patent and gross abuse of his discretion." On the contrary, he could reasonably have regarded defendant's involvement with Anchor Finance as part of an organized criminal activity and defendant's alleged criminal activity as deliberate in nature "as opposed to a solitary incident of unreflected spontaneity." As such, it provided an acceptable basis for finding him disqualified for diversionary treatment. See PTI Guidelines 3(i)(1) and (2), which in pertinent part, provide:
GUIDELINE 3. The following factors must be considered along with other relevant circumstances in evaluating a defendant's application for admission to a pretrial intervention program:

* * * * * * * *
(i) Assessment of the Nature of the Offense: Any defendant charged with crime is eligible for enrollment in a PTI program, but the nature of the offense is a factor to be considered in reviewing the application. If the crime was (1) part of organized criminal activity; or (2) part of a continuing criminal business or enterprise; .... [PTI Guidelines, 99 N.J.L.J. 865, 874 (September 30, 1976)]
The assignment judge's consideration of the fact that defendant was not charged with conspiracy as a basis for overruling the Attorney General's veto of defendant's PTI application was erroneous. In our view, justification for the prosecuting attorney's attitude in ruling on such an application must not be limited to the four corners of the indictment against a defendant. The proper range of prosecutorial discretion in such cases is dependent upon all of the surrounding circumstances of a particular offense. Here, for example, the five specific charges of false and fraudulent *103 representations made by defendant to purchasers of Anchor Finance securities extended over a substantial period of time and, of necessity, required the cooperation and participation of others associated with Anchor Finance. The fact that the State Grand Jury did not return an indictment charging defendant with conspiracy, as with three of the codefendants, does not mean that the Attorney General could not have considered defendant involved in a scheme to cheat and defraud the public by selling worthless securities of Anchor Finance. Under the circumstances, the Attorney General properly argued that this defendant was part of an organized and continuous criminal activity and, hence, was not a proper candidate for diversionary treatment.
Moreover, the Attorney General was justified in opposing defendant's admission to the PTI program on the ground that it could conceivably affect the trial of the other four named defendants. See Guideline 3(j) which provides:
(j) Co-defendants: The impact of diversion on the prosecution of co-defendants is a factor to be considered. [PTI Guidelines, 99 N.J.L.J. 865, 874 (September 30, 1976)]
The State undoubtedly would have a better chance of successful prosecution of all the other defendants involved with Anchor Finance if this defendant was required to go through the regular criminal process rather than being diverted. For example, as a result of plea negotiations with defendant, the State could obtain his cooperation in prosecuting the remaining codefendants. Such cooperation would be extremely difficult to obtain if defendant were admitted to a diversionary program.
Accordingly, the order of the Law Division directing the Coordinator of the Pretrial Intervention Program of Mercer County to process defendant's application is reversed.