165 N.J. Super. 190 (1979)
397 A.2d 1122
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES ORTIZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1978.
Decided January 22, 1979.
*191 Before Judges CONFORD, PRESSLER and KING.
Mr. Thaddeus C. Raczkowski argued the cause for appellant (Messrs. Gruber and Raczkowski, attorneys).
*192 Mr. Donald W. Peppler, Jr., Assistant Prosecutor, argued the cause for respondent (Mr. Alexander D. Lehrer, Monmouth County Prosecutor, attorney).
The opinion of the court was delivered by PRESSLER, J.A.D.
On leave granted, defendant Charles Ortiz appeals from an order of the trial court affirming the action of the Monmouth County Program Director, concurred in by the County Prosecutor, rejecting his application for admission into the county's pretrial intervention program (PTI). Appreciative as we are of the very high degree of deference which the exercise of prosecutorial discretion must be accorded, our review of this record nevertheless persuades us that this is one of those special and extraordinary cases where defendant has borne his heavy burden of proving that the denial of his application constitutes a gross and patent abuse of discretion within the intendment of State v. Leonardis II, 73 N.J. 360 (1977). We believe the reasons for this conclusion are self-evident, as they should be, in a recital of the alleged criminal episode and the pertinent factors relating to defendant's personal situation.
On February 15, 1978 defendant, then 19 years old, was living in Howell Township with his mother and stepfather in a house owned by them jointly. He had not completed high school, had served seven months in the army from which he had been honorably discharged and was then menially employed. He had neither a juvenile nor an adult conviction or arrest record. Such problems of personality and adjustment which he did have had never before, apparently, interfered with his ability to function on a societally acceptable and unexceptionable level. Those personal problems were and continue to be directly related to his unfortunate and difficult familial situation. Defendant is the product of the union of a Puerto Rican mother and black father. His early childhood was characterized both by paternal abuse and racial identity problems which he finally resolved by accepting black identity. His stepfather, Arthur Bellengreri, is *193 white. The relationship between defendant and his stepfather has been difficult and strained and there was apparently a great deal of hostility and resentment shown to the boy by his mother's second husband.
On the evening in question defendant and Bellengreri became involved in a quarrel as a result of which Bellengreri called the Howell Township Police Department requesting its assistance in removing the boy from the home. Two police cars were dispatched to the house, Patrolman Roe in the first and Patrolman Raimondi in the back-up vehicle. According to Officer Roe's report, there was, upon his arrival, no breach of the peace either in progress or imminent. Rather, Bellengreri simply advised him that defendant "had been causing a disturbance in the house and on being told to leave, refused to do so." At that point Raimondi arrived and as further indicated in Roe's report, "In the presence of both officers, Mr. Bellengreri ordered Charles Ortiz from the premises." Following defendant's refusal to leave his own home, expletively expressed, "Raimondi asked Bellengreri if he owned the home. He replied yes, he was the legal owner." Roe then "gestured at the accused" and told him "he must leave, he was not wanted in or around the house." The police officers, upon defendant's continued refusal to leave, placed him under arrest. Defendant thereupon completely lost control of himself, flailing out at the officers and resisting their attempts to physically remove him from the premises. Two additional officers were summoned to the house and defendant was finally sufficiently subdued to be handcuffed. His wild resistance apparently continued while being transported to police headquarters, where he was manacled to a rail and attempted to unlock the handcuffs with a pair of scissors he had in his pocket. While one of the officers was attempting forcibly to take the scissors away from him he lashed out at the officer with a plastic "pick comb." Apparently the police had not deemed it necessary to remove grooming articles from defendant's person when he was initially taken into custody. During the entire rather *194 protracted episode, according to the police reports, he was in a wild frenzy, shouting obscenities and kicking the restraining bench to which he was handcuffed. He was finally placed in the county jail before being admitted to bail. As a result of these events a seven-count indictment was ultimately returned against him, charging him with four counts of assault and battery upon a police officer, one count of resisting arrest, one count of assault with offensive weapons, namely the scissors and pick comb, and one count of possession of dangerous weapons, namely the scissors and the pick comb.
In due course, defendant applied to the Monmouth County pretrial intervention program. His notice of rejection, as required by Guideline 2[1] stated not only specific reasons therefor, but also advised him of his opportunity to present additional materials to the Program Director "demonstrating amenability to the rehabilitative process, showing compelling reasons justifying admission and establishing that a decision against enrollment would be arbitrary and unreasonable." Four reasons for rejection were set forth, the first of which dealt with the nature of the offenses charged and the remaining three with defendant's attitude, which was evaluated by the interviewer as not conducive to short-term rehabilitation. The gist of the first reason was that the crime was within the intendment of Guideline 3(i) (3), namely, one *195 "deliberately committed with violence or threat of violence against another person." The second reason, after quoting from the Comment on Guideline 4[2] (erroneously suggested to be the text of the Guideline itself), concluded that "Throughout the interview you attempted to project the blame on your stepfather and the arresting officers. You also inferred that the `white people' in the State of New Jersey are prejudiced toward you and your family." The third reason, after quoting from the Comment on Guideline 1(d)[3] *196 (also erroneously suggested as the text of the guideline itself), concluded that "It is unlikely that your hostile feelings toward authority figures and others can be reconstructed by the time allotted for PTI. This problem may require long-term intensive counselling." Finally, the last reason, quoting from the text of Guideline 4 itself, concluded that "Throughout the interview you maintained your innocence (which is your right) but continued to forward the blame on other people and circumstances. You failed to recognize your responsibility for the alleged assault. It is my opinion that while this attitude continues, it is unlikely that behavior change can occur as a result of short-term counselling."
As this court recently held in State v. Lamphere, 159 N.J. Super. 562, 565 (App. Div. 1978), the clear intention of both Leonardis II, supra, and State v. Leonardis I, 71 N.J. 85 (1976), was to express "a broad, liberal view as to the criteria to be utilized for admission to a PTI program." Given that liberality and the salutary rehabilitative purpose of PTI, we believe that the rejection here was predicated on what may fairly be characterized as a gross misapplication and misconception of both the letter and the spirit of the Guidelines and their accompanying Comments, which in our view were relied on out of context of the objectives of the program.
The so-called "attitudinal" reasons constitute a serious distortion of the circumstances here involved. We start off *197 with a young man arbitrarily ordered out of his own home by an abusive and resentful stepfather acting unilaterally and contrary to the wishes of the boy's mother, the co-owner of the house.[4] The police, summoned by the stepfather, then physically evicted the boy from his home in which he had an apparent right to remain unmolested simply on the stepfather's demand and apparently without any breach of the peace or other suggestion of the propriety or need for such immediate police action. We do not, of course, in any way intend to suggest that we condone this youngster's violent and outraged reaction to this situation. Obviously, he should have acceded to the police demand whether or not the initial arrest was lawful, and the sorting out of the domestic impasse should have been left to an appropriate later time. But what we do perceive in this situation is a psychologically understandable provocation for the defendant's having gone berserk. In the context of this background and defendant's personal history, we do not believe it fair to conclude, as did the Program Director, that the defendant's subsequently expressed antagonism toward the stepfather should disqualify him as a candidate for short-term rehabilitative efforts. The patent intention of Guideline 1(d) is to reserve the criminal justice process for those demonstrating serious criminality or a severe correctional problem. Defendant demonstrates neither. The patent import, moreover, of that portion of the Comment on Guideline 1(d) relied upon by the Director is to suggest the inappropriateness of PTI where a pattern of antisocial behavior is rooted in psychosis, drug-abuse or other chronic problem requiring long-term treatment. That also is obviously not the situation here. This defendant has legitimate provocation for many of his responses and reactions and his counseling need is for assistance in dealing with them constructively.
*198 With respect to the reason based on the nature of the offense, we believe that the conduct here, committed while defendant was in a frenzied and out-of-control condition engendered by his outrage, is not realistically classifiable as deliberate within the intendment of the Guideline. Nor does the conduct fall within any of the other prima facie disqualifying conduct therein set forth.
In terms of personal profile, as it were, we regard this defendant as representing precisely the type of person accused of crime whom the Supreme Court intended as the beneficiary of PTI. He is young. He has not in respect of this episode or previously thereto[5] evidenced a criminal or antisocial mentality or orientation. His crime was committed during the course of a single episode which was, in respect of his normal pattern of conduct, completely aberrational and caused by provocation not unrealistically perceived by him as compelling. The actual consequences of the criminal conduct did not prove to be disproportionately egregious. Subjecting the defendant to the criminal process would be obviously counterproductive to the ultimate rehabilitative goal. Compare, for example, State v. Maddocks, 160 N.J. Super. 490 (App. Div. 1978), where this court reversed the denial of a youth who in an aberrationally intoxicated condition stole 11 packs of cigarettes, candy and $3 in cash from a boardwalk candy store, with those cases in which PTI was denied such as State v. Bender, 159 N.J. Super. 465 (App. Div. 1978), and State v. Markt, 156 N.J. Super. 486 (App. Div. 1978), both involving a breach of the public trust; State v. Litton, 155 N.J. Super. 207 (App. Div. 1977), involving a crime invoking "public anxiety" and the unavailability of an appropriate treatment program; and State v. Barrett, 157 N.J. Super. 96 (App. Div. 1978), involving a defendant engaged in a continuing criminal activity whose admission might *199 seriously affect the prosecution of co-defendants. We do not, in short, perceive here legitimate considerations grounded in the inherent and nebulous "dynamics of selection" such as concerned this court in State v. Litton, supra, 155 N.J. Super. at 214-215.
With respect to the specific rehabilitative goal there are additional circumstances to which we have not yet adverted and which further reinforce our view as to the entitlement of this defendant to PTI. Upon defendant's receipt of the rejection notice his attorneys, in an overabundance of zeal, sought what proved to be somewhat contradictory recourse. They promptly filed a motion with the trial court seeking reversal of the administrative rejection. They simultaneously sought to produce additional materials in accordance with Guideline 2 by arranging for defendant to be interviewed both by a Dr. Ucko, a staff psychiatrist of the Mount Carmel Guild and by a clinical counselor, Reverend Martin Padovani of Bordentown. At the time of the return date of the motion both interviews had been conducted but defense counsel had only been able to obtain a brief handwritten note from Rev. Padovani and a telephone report from Dr. Ucko, subsequently reduced to writing and submitted to us at our request on this appeal together with Rev. Padovani's report. For reasons not at all clear to us, the trial judge denied defendant's application to continue the hearing on the motion for one week in order to permit him time to submit the materials in proper form both to the Program Director and the court. As a procedural matter it would have been more orderly for defendant to have presented these supplementary materials to the Program Director first and withheld his motion to the trial court until he had an opportunity to respond to them. We appreciate, however, counsel's concern in moving expeditiously on all fronts in order to avoid the possibility of foreclosure on any. We note that while the Guidelines prescribe time requirements for making the initial PTI application, they are silent with respect to time limitations for *200 complying with the supplementary material opportunities of Guideline 2 or for seeking judicial relief pursuant to Guideline 8. These are procedural gaps perhaps worthy of future attention by the Supreme Court.
In these circumstances we are aware of our option to remand the matter so that the Program Director may consider these two reports and if the administrative decision is not affected thereby, so that the trial court can. We decline to do so for several reasons. First, we are of the view that the administrative denial was arbitrary even without consideration of the two reports. Guideline 2 affords the opportunity for submission of supplementary materials when the application "indicates factors which would ordinarily lead to exclusion under the guidelines," and we do not view this application to be of that category. Secondly, the content of the reports themselves, not contradicted in any way by the prosecutor on this appeal, are persuasive of the conclusion of defendant's amenability to short-term counseling and his freedom from any criminal orientation. Finally, we are satisfied that our final disposition of this matter on the record before us serves not only defendant's personal interest but the interest of the criminal justice process itself in expeditious disposition.
The order appealed from is reversed and defendant's enrollment in the Monmouth County Pretrial Intervention Program is hereby ordered.
NOTES
[1] Guideline 2 provides in full that:

Eligibility for PTI is broad enough to include all defendants who demonstrate sufficient effort to effect necessary behavioral change and show that future criminal behavior will not occur. Any defendant accused of crime shall be eligible for admission into a PTI program. When the application indicates factors which would ordinarily lead to exclusion under the guidelines established hereinafter, the applicant nevertheless shall have the opportunity to present to the program director, and through him to the prosecutor, any facts or materials demonstrating his amenability to the rehabilitative process, showing compelling reasons justifying his admission, and establishing that a decision against enrollment would be arbitrary and unreasonable.
[2] Guideline 4 provides in full that:

Enrollment in PTI programs should be conditioned upon neither informal admission nor entry of a plea of guilt. Enrollment of defendants who maintain their innocence should be permitted unless the defendant's attitude would render pretrial intervention ineffective.
The Comment provides in full that:
A PTI program is presented to defendants as an opportunity to earn a dismissal of charges for social reasons and reasons of present and future behavior, legal guilt or innocence notwithstanding. This stance produces a relation of trust between counselor and defendant. Within the context of pretrial intervention when and whether guilt should be admitted is a decision for counselors. Counselors should be free to handle each case individually according to their best judgment.
Neither admission of guilt nor acknowledgement of responsibility is required. Steps to bar participation solely on such grounds would be an unwarranted discrimination.
Nevertheless, many guilty defendants blame their behavior on society, family, friends or circumstance, and avoid recognition of the extent of their own role and responsibility. While such an attitude continues, it is unlikely that behavioral change can occur as a result of short-term rehabilitative work. An understanding and acceptance of responsibility for behavior achieved through counseling, can and often does, result in the beginnings of the defendant's ability to control his/her acts and is an indication that rehabilitation may, in large measure, have been achieved.
[3] Guideline 1(d) states as a purpose of pretrial intervention "To assist in the relief of presently overburdened criminal calendars in order to focus expenditure of criminal justice resources on matters involving serious criminality and severe correctional problems." Accordingly, the Comment explains that

Guideline 1(d) provides for removing from ordinary prosecution those who can be deterred from criminal behavior by short term rehabilitative work or supervision. It is to be emphasized that the potential for rehabilitation must be considered in light of the time periods embodied in Rule 3:28(b) (c) (d).
The deterrence of criminal behavior in many cases requires intensive work: counseling, psychotherapy, drug-abuse prevention and control, employment placement. Programs in these cases should be measured against available treatment facilities and the time constraints of PTI. For other defendants, however, no more than a supervised pretrial probationary period may be necessary when no extensive need for rehabilitative services can be discerned.
[4] Mr. and Mrs. Bellengreri have since separated, she has filed a divorce action against him and the house in Howell Township is now occupied by her and the defendant.
[5] We are advised by defense counsel that during the pendency of this appeal defendant was convicted, with three others, of trespassing on private swim club property and was fined $25.