168 N.J. Super. 109 (1979)
401 A.2d 1106
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SCOTT MAGUIRE, DOMINIC PAPA, DANIEL K. BREEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 23, 1979.
Decided February 2, 1979.
*111 Before Judges HALPERN and ARD.
Mr. Oscar W. Rittenhouse, Prosecutor of Hunterdon County, attorney for appellant.
Mr. Stanley C. Van Ness, Public Defender of New Jersey, attorney for respondent Scott Maguire (Mr. Thomas R. Ryan, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. Stanley C. Van Ness, Public Defender of New Jersey, attorney for respondent, Dominic Papa (Mr. Gaetano M. DeSapio, designated counsel, of counsel and on the brief).
Respondent Daniel K. Breen did not file a brief.
The opinion of the court was delivered by HALPERN, P.J.A.D.
*112 We granted leave to appeal in order to evaluate the decision of the trial judge who ordered the diversion of three defendants into the Hunterdon County Pretrial Intervention Program (PTI). In doing so the trial judge overruled the prosecutor's disapproval of the diversion. The requests for diversion had previously been investigated and acted upon favorably by the PTI program coordinator.
We approach the issue confronting us with full realization of the limited scope of review exercised by the judiciary in these cases, namely, that the trial judge must accord great deference to the prosecutor's refusal to consent to PTI diversion; that a heavy burden rests upon a defendant who seeks to overcome a prosecutorial veto of his admission into PTI, and that we are mandated to interpret the Guidelines promulgated by the Supreme Court on September 8, 1976 to supplement R. 3:28 so as to require a defendant, seeking to upset a prosecutor's action, to show that his refusal was arbitrary and capricious (Guideline 8) and amounted to a patent and gross abuse of discretion. State v. Leonardis, 73 N.J. 360, 381-382 (1977) (Leonardis II); State v. Maddocks, 160 N.J. Super. 490, 493 (App. Div. 1978); State v. Bender, 159 N.J. Super. 465, 469-470 (App. Div. 1978); State v. Atley, 157 N.J. Super. 157, 162 (App. Div. 1978); State v. Barrett, 157 N.J. Super. 96, 101 (App. Div. 1978); State v. Markt, 156 N.J. Super. 486, 491 (App. Div. 1978); State v. Litton, 155 N.J. Super. 207, 217-218 (App. Div. 1977). With these standards in mind we have considered the entire record and affirm the action of the trial judge in permitting diversion of the three defendants despite the prosecutor's objections.
For a better understanding of our decision it is essential that we distill the undisputed facts appearing in the record. Various complaints were made against the three defendants, Scott Maguire, Dominic Papa and Daniel K. Breen, arising out of their having broken several large windows at the Hunterdon Central High School on October 13, 1976 and, *113 on the same night, for breaking and entering a Photomat store with the alleged intent to steal. Papa was caught by the police in the Photomat store. A fourth companion, Gary Olsen, was also involved in the escapade but he is not involved in this appeal.
None of the three defendants had a juvenile or adult criminal record. Admittedly, we are not confronted with a typical case of criminal violence; rather, it falls into the category of "victimless crime" resulting in malicious damage to property. We note in passing that defendants have offered to pay for the damage done.
Breen applied for PTI admission on February 24, 1977 and was recommended for the program on March 31, 1977. Papa applied on March 21, 1977 and was also recommended on April 11, 1977. Maguire applied on April 15, 1977 and was also recommended on July 1, 1977. The applications and recommendations were sent to the prosecutor on August 2, 1977. The indictments arising out of the charges here involved were returned by the grand jury on April 29, 1977. The prosecutor did not notify the three defendants of his refusal to consent to their diversion into PTI until December 1, 1977. His reasons for rejecting the applications were contained in three separate letters to the program coordinator, but each one contained exactly the same wording and will be referred to hereinafter. Following a hearing the trial judge overruled the prosecutor's objections and ordered PTI diversion for the three defendants. We granted the State leave to appeal and consolidated the appeals.
The evaluative reports and recommendations for each defendant, as made by the counseling supervisor of the Hunterdon County PTI program, are set forth verbatim and annexed to this opinion for a better understanding of the facts. For the purpose of brevity we have not attached other portions of the supervisor's evaluative reports because they had no material bearing on his ultimate recommendations.
*114 A brief synopsis of each evaluation follows:
Maguire is 23 years old and has no prior criminal record. He is a college graduate who has been steadily employed since graduation. He has, or had, an alcohol problem, but the supervisor felt the overall picture called for his "strongly" recommending him for PTI on certain stated conditions.
Breen is 22 years old and has no prior criminal record. He is a high school graduate and lives in the home of his parents. He is gainfully employed and has been commended by his employer as "a reliable worker, respected by the staff [other employees]." The supervisor also recommended him for PTI on certain stated conditions.
Papa is 19 years old and also has no prior criminal record. He is a high school graduate and is gainfully employed. He is anxious to enlist in the United States Navy. The Naval Recruiting Officer indicates that based on Papa's excellent test scores he qualified for any naval program offered, and he would accept him if his present difficulties were resolved. The supervisor also recommended him for PTI on certain stated conditions.
In refusing to consent to defendants' diversion, the prosecutor wrote, as to each defendant, the following letter to the PTI coordinator:
 December 1, 1977
 Dr. Richard Achey
 Coordinator
 Pretrial Intervention Program
 Five Mine Street
 Flemington, New Jersey 08822
 State v. Dominic Papa
Dear Doctor Achey:
I have reviewed the Evaluative Report and Plan of Counseling/Supervision for the above applicant to the Hunterdon County Pretrial Intervention Program, as well as our file in this matter.
These charges stem from a series of incidents on October 13, 1976, in which defendant was involved along with Gary Olson [sic], Scott McGuire [sic] and Daniel K. Breen. The allegations of the complaint indicate the smashing of a large plate-glass *115 window at Hunterdon Central High School and breaking into a Photomat store in the Borough of Flemington.
I am not consenting to the recommended postponement of charges in this matter. One of the codefendants, Gary Olson, has not filed an application for Pretrial Intervention, and allowing the other defendants into this Program would deter effective prosecution of that individual. In addition, alternate means of prosecution available to this office would indicate a greater likelihood of rehabilitation of the defendant. By utilizing simple disorderly persons charges, if agreed to by defendant, probation for a reasonable period of time, incarceration and fine are all available to impress upon this defendant the seriousness of the offense involving destruction of personal property and, hopefully, to deter him and others who might be curious as to law enforcement's reaction to this type of activity, which has been all to [sic] prevalent in this community.
In addition, the Evaluative Report indicates an interest on the part of this defendant to join the United States Navy. Such enrollment would not be imperiled by a disorderly person conviction.
Finally, the varying degrees of culpability of the defendants and varying degrees of involvement with the law in the case of each of the defendants makes it difficult to separate them in treatment between Pretrial Intervention and nonPretrial Intervention. The flexibility is much greater in this respect by maintaining all defendants within the system and tailoring the sentencings, in the event of convictions, to their respective needs and in accordance with these degrees of culpability.
With kindest regards, I am
 Very truly yours,
 [signed]
 OSCAR W. RITTENHOUSE
 County Prosecutor
We find the reasons given by the prosecutor for refusing to consent to diversion to be arbitrary and capricious, and a patent and gross abuse of discretion.[1] His stated objections to defendants' applications, and the manner in *116 which they were processed, indicate a lack of good faith in appraising the relevant facts and circumstances. The tenor of the prosecutor's brief indicates that he sees the issue on appeal to be "the right of the trial court to substitute its judgment for that of the Prosecutor in determining whether or not a defendant should be admitted in the Pretrial Intervention Program." He completely misconceives the court's function. The trial judge did not substitute his judgment for the prosecutor's  he was merely exercising his power to review the prosecutor's action, which is quasi-judicial in nature, to determine whether he arbitrarily failed to follow the Guidelines in refusing to consent to the diversion. Leonardis II, supra at 375. On the appeal before us we review the trial judge's decision by a searching and close review of the record to determine whether he used the proper standards in reviewing the prosecutor's action, and whether the trial judge's decision is supported by sufficient credible evidence.
Guidelines 6 and 7 make it clear that applications for admission into PTI should be expeditiously made and acted upon by all concerned so as to relieve defendants from the anxiety of facing prosecution and enabling the rehabilitative processes to commence at an early date. Here, the prosecutor waited about seven months before objecting to the applications which were timely made.
It is obvious that the prosecutor, in writing the letters of December 1, 1977, failed to deal with defendants on a prompt and individual basis. The fact that defendants were involved in a single night of wrongful conduct does not justify grouping them as he did. We are dealing with young persons whose futures hang in the balance, and whose applications for diversion mandate prompt individualized study and consideration. This was not afforded to them here. Rather, it would appear that the prosecutor may have personal reservations about the philosophical underpinnings of PTI and the court's role in connection therewith. Such an attitude, however, should not deter him from acting on the individual merits of each case. It is difficult for us to visualize any *117 set of facts more compelling for diversion than those existing here. If not granted in this case, when should it be granted?
The inference is clear that the prosecutor was looking for a plea bargain from defendants in order to reduce the charges in the indictments to disorderly persons offenses. For him to argue that Olsen did not apply for diversion and that therefore allowing these defendants to enter PTI would deter "effective prosecution of that individual [Olsen]" smacks of a desire on the prosecutor's part to prosecute Olsen at the cost of depriving defendants of the beneficent purposes of PTI under Guideline 1(a). Nor do we understand how the diversion of these defendants will be a material factor in Olsen's trial, or why it should even be considered since Guideline 2 makes any defendant eligible for PTI who qualifies and is amenable to short-term rehabilitation.
The prosecutor's assertion that there are varying degrees of involvement by the four, thus making it difficult to separate them in a diversion program, lacks substance. If the PTI program is unable to differentiate between codefendants then the program has no merit and should be abandoned. The opposite, however, is true. See "Pretrial Intervention Legal Issues, a Guide to Policy Development," pp. 9-10 (1977), published by the Pretrial Intervention Service Center of the American Bar Association.
Finally, the prosecutor's contention that keeping defendants within the criminal justice system, without diverting them, because the system is more flexible and can be tailored to afford a punishment to meet defendants' needs, flies in the face of the purposes sought to be accomplished in adopting R. 3:28 and its implementing Guidelines. The prime function of PTI, as specified in Guideline 1(a), is to divert qualified applicants from the criminal justice system so that they may benefit from "early rehabilitative services." It is a defendant's reasonable prospect for early rehabilitation by diversion which is the goal, not branding him as a criminal and then attempting to rehabilitate him. See State v. Litton, supra 155 N.J. Super. at 214. We are convinced *118 on this record that in light of the respective ages of these defendants, their backgrounds and the nature of the offenses here involved, they are amenable to correction, and are excellent prospects to respond to early rehabilitation and should be given the benefits granted by R. 3:28(b), (c) and (d).
Accordingly, it is our considered view that the prosecutor's refusal to consent to diversion here was a patent and gross abuse of discretion, and that the trial judge's action in allowing the three defendants to enter PTI was appropriate.
The judgment below is affirmed.
*119 
*120 
*121 
NOTES
[1] The terms "patent and gross" are extremely difficult to define and to apply. See Judge Conford's concurring opinion in Leonardis II, supra 73 N.J. at 394. However, as used by our courts in these cases, we have construed the terms to mean when the result reached has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require court intervention.