206 N.J. Super. 307 (1984)
502 A.2d 578
STATE OF NEW JERSEY
v.
JAMES POINSETT, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided December 12, 1984.
*309 Francis J. Hartman, for defendant (Francis J. Hartman, Chartered).
Rocco Minervino, Assistant Prosecutor, for the State (Stephen Raymond, Burlington County Prosecutor).
*310 HAINES, A.J.S.C.
The defendant, James Poinsett, and three others, have been indicted for various violations of the Controlled Dangerous Substances (CDS) Act. The indictment against Poinsett contains seven counts, which include charges of possession of CDS with intent to distribute. Substantial quantities of cocaine, methamphetamine and marijuana were seized at the time of his arrest and are claimed to be under his control.
Poinsett applied for admission to Burlington County's Pretrial Intervention Program (PTI). At the same time, he acknowledged his drug and alcohol addiction, entering into programs designed to overcome those problems. He also secured reemployment at an old job. He claimed a strong desire for rehabilitation. The PTI Director consented to his admission. The Prosecutor did not, basing his refusal upon prosecutorial policies relating to drug offenses, the needs of society, the nature of the offense and difficulties in prosecuting co-defendants. Consequently, Poinsett's application was denied. He appeals to this court from that denial as permitted by N.J.S.A. 2C:43-12 and R. 3:28.
The defendant has presented only the Prosecutor's refusal letter as the appellate record. Consideration of the appeal is therefore limited to an analysis of the Prosecutor's reasons and the facts recited above. These facts were exposed during argument without objection. They are not significant for the purposes of this opinion.
The Prosecutor's refusal cannot be reversed unless it is shown to have been a "patent and gross" abuse of discretion. The rule is set forth in State v. Bender, 80 N.J. 84 (1979):
Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon the consideration of all relevant factors, (b) was based upon the consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. [Citations omitted] In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention. [at 93.]

*311 A. Consideration of the Individual

Defendant argues that the Prosecutor improperly ignored his individual characteristics, basing his rejection upon generalized concepts. Consideration of the individual characteristics is a basic PTI requirement. In State v. Leonardis, 71 N.J. 85 (1976) (Leonardis I), the Supreme Court said:
Because rehabilitation is dependent on an individual's propensity for correction, conditioning his admission solely on the nature of his crime may be both arbitrary and illogical. Greater emphasis should be placed on the offender than on the offense. [at 102.]
In State v. Maguire, 168 N.J. Super. 109 (App.Div. 1979), the court said:
It is obvious that the prosecutor, in writing the letters of December 1, 1977, failed to deal with defendants on a prompt and individual basis. The fact that the defendants were involved in a single night of wrongful conduct does not justify grouping them as he did. We are dealing with young persons whose futures hang in the balance, and whose applications for diversion mandate prompt individualized study and consideration. [at 116.]
In State v. Lamphere, 159 N.J. Super. 562 (App.Div. 1978), the court said:
The emphasis ... is on the individual offender and his potential for rehabilitation, rather than the offense or the offender's status. Neither these opinions nor the Guidelines authorize a priori exclusion of an offender from the program without a judgmental consideration of the individual and the offense. [at 565.]
In the present case, the Prosecutor addressed the individual defendant only in his recital of the facts that relate to the criminal charge. He did not mention the defendant's prospects for rehabilitation, his attitudes, his past history, or his present efforts to reconstruct his life. This omission is central, making the Prosecutor's reasons inadequate.

B. Prosecutorial Policy

The Prosecutor states:
Burlington County experiences a frightening proliferation of drug trafficking, both as a corridor County through which passes major highways that channel drugs from the importation points located in the South to the highly populated and profitable markets of the Northeast section in the United States and, more importantly, such trafficking within this county.

*312 It is the policy of this office that those individuals who are found trafficking in controlled dangerous substances within this County; in particular, those who traffic in cocaine and methamphetamine should be tried, and if found guilty, given a term of imprisonment within the New Jersey State Prison system. It is the firm belief of this Office that only such policy can deter such an insidious and covert crime such as this.
....
... to divert him would adversely affect the efforts of law enforcement within this County to protect the public from the pernicious evil of drug trafficking.
These are legitimate goals, and prosecutorial policy is an important PTI consideration. State v. Litton, 155 N.J. Super. 207 (App.Div. 1977), for example, acknowledges that the "prosecutor's responsiveness to prevailing levels of local public anxiety over certain forms of misconduct and its proper effect upon him in choosing between the goals of public deterrence and the least burdensome form of rehabilitation for the offender" cannot be discounted. Id. at 215. (This opinion was written during the early stages of PTI programs in New Jersey. It must be read in the light of its own acknowledgment that "the spirit of reserved and skeptical appraisal is not inappropriate at this still formative time in the life of the program." Id. at 216. State v. Sutton, 80 N.J. 110 (1979), held that "the degree of local public anxiety attaching to certain forms of misconduct" is a relevant "subjective" evaluation to be made by the Prosecutor. Id. at 119. It is apparent, however, that "automatic exclusion... is contrary to the purpose and philosophy underlining the adoption of the program...." State v. Lamphere, 159 N.J. Super. at 565. Consequently, prosecutorial policy, while a consideration, cannot be an absolute bar to PTI admission.
It is also true that N.J.S.A. 2C:43-12(e)(7) requires the Prosecutor and the Program Director to consider "[t]he needs and interests of the victim and society" and that subparagraph (17) requires them to consider "[w]hether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a *313 supervisory treatment program." The Prosecutor addressed these criteria by stating in his letter of rejection that:
[T]he needs of society, the nature of the crime, the public need for prosecution of those involved in drug trafficking and the harm that would be done to society by abandoning the criminal prosecution, at this point, far outweigh any benefits to society gained by the participation of this defendant in the Pre-trial Intervention Program.
Social need, like prosecutorial policy, however, is only a consideration. It is not a goal to be substituted for a PTI program.
It is apparent that the Prosecutor, through the adoption of policy, could automatically exclude certain crimes from PTI consideration. The policy expressed here, for example, is broad enough to exclude all Burlington County defendants charged with drug offenses from PTI programs. Such exclusion is not permissible. Lamphere at 565. All defendants, regardless of the crime committed, are entitled to be considered for PTI admission. State v. Bender, 80 N.J. at 89. Furthermore, the Prosecutor, in fact, has consented to the PTI admission of numerous defendants charged with drug offenses in Burlington County.[1] A final problem affects the prosecutorial references to the "needs of society." The references merely parrot the language of the statute and the PTI Guidelines, an approach which does not satisfy the requirement that written reasons for rejection be furnished to the defendant. State v. Atley, 157 N.J. Super. 157, 163-64 (App.Div. 1978).
Any policy adopted by the Prosecutor must be one that does not automatically exclude any individual charged with any offense from PTI admission. The policy must take into consideration the individual characteristics of every defendant who applies for admission. When an application is rejected, reasons must be furnished that show why the particular individual does not have characteristics entitling him or her to admission notwithstanding *314 the policy. In addition, when the "needs of society" are asserted as a basis for rejection, reasons supporting that conclusion, which go well beyond the mere quotation of statutory language, must be given. Id. at 164.

C. The Nature of the Offense

The Prosecutor refers to "the nature of the crime" as a reason for rejection. It is a required concern. N.J.S.A. 2C:43-12e(1). In Bender, the court noted that admission to PTI "is to be measured according to (a) the individual's amenability to correction, (b) his responsiveness to rehabilitation, and (c) the nature of the offense with which he is charged. Bender, 80 N.J. at 89. In State v. Maddocks, 80 N.J. 98 (1979), the court said: "[T]he nature of the crime charged is an appropriate factor to be weighed by the prosecutor en route to his decision." Id. at 108. In State v. Markt, 156 N.J. Super. 585 (Law Div. 1977), the court held that the nature of the offense was an appropriate basis for rejection because a breach of public trust was involved. In Leonardis I, the court said that "conditioning his admission solely on the nature of his crime may be both arbitrary and illogical." Leonardis I, 71 N.J. 102. In State v. Leonardis, 73 N.J. 360 (1977) (Leonardis II), the court said: "[E]very defendant is entitled to consideration." However, the prosecutor's refusal to consent or the court's denial of a diversion order may, where appropriate, be based solely on the nature of the offense charged." Id. at 382; emphasis supplied.
Guideline 3, to R. 3:28, the PTI Rule, provides:
(i) Assessment of the Nature of the Offense: Any defendant charged with crime is eligible for enrollment in a PTI program, but the nature of the offense is a factor to be considered in reviewing the application. If the crime was (1) part of organized criminal activity; or (2) part of a continuing criminal business or enterprise; or (3) deliberately committed with violence or threat of violence against another person; or (4) a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime, the defendant's application should generally be rejected.
This recital of authorities exhibits some difficulty in assessing PTI consequences that may be attached to the "nature *315 of the offense." Bender and Maddocks consider it to be a factor, not an absolute. Leonardis II made it a sole consideration "where appropriate." Markt found a breach of public trust appropriate. Guideline 3 refers to the nature of the offense as a "factor." Arguably, the Guideline limits such consideration to crimes involving organized or continuing criminal activity, deliberate violence, or a breach of public trust. This may be the implication in State v. Ortiz, 165 N.J. Super. 190 (App.Div. 1979), where the court found that defendant's violence was not deliberate. Id. at 198. It therefore appears that only an offense having peculiarly unacceptable characteristics may be used as the sole reason for denying a PTI application. The only offense so defined by the courts, thus far, is one that involves a breach of the public trust. Are the within drug offenses in the same category? That question should not be answered unless, and until, the Prosecutor takes that position and provides supporting reasons. State v. Atley, 157 N.J. Super. at 163-64. He has not done so in this case, and it must therefore be concluded that reliance upon the "nature of the offense" may not be the only reason for rejection. In any event, the lack of reasons makes this assertion an inadequate one for present purposes.

D. The Problem of Co-defendants

The Prosecutor states:
Furthermore, it is the opinion of this Office that this defendant's participation in the Pre-trial Intervention Program would adversely affect the prosecution of his co-defendants and that his involvement with the other defendants in the crimes charged is such that the interest of the State of New Jersey would best be served by processing this case through the traditional criminal justice system procedures.
This is another necessary consideration. N.J.S.A. 2C:43-12(e)(16) requires Prosecutors and Directors to consider "whether or not applicant's participation in pretrial intervention will adversely affect the prosecution of co-defendants." Guideline 3(i) to R. 3:28 is to the same effect. In State v. Barrett, *316 157 N.J. Super. 96 (App.Div. 1978) the court found this to be an adequate reason for opposing admission to PTI. It said:
The State undoubtedly would have a better chance of successful prosecution of all the other defendants involved with Anchor Finance if this defendant was required to go through the regular criminal process rather than being diverted. For example, as a result of plea negotiations with the defendant, the State could obtain his cooperation in prosecuting the remaining codefendants. Such cooperation would be extremely difficult to obtain if defendant were admitted to a diversionary program. [at 103.]
In Maguire, however, the court said:
For [the prosecutor] to argue Olsen did not apply for diversion and that therefore allowing these defendants to enter PTI would deter "effective prosecution of that individual [Olsen]" smacks of a desire on the prosecutor's part to prosecute Olsen at the cost of depriving defendants of beneficient purposes of PTI under Guideline 1(a). Nor do we consider how the diversion of these defendants will be a material factor in Olsen's trial, or why it should even be considered since Guideline 2 makes any defendant eligible for PTI who qualifies and is amenable to short-term rehabilitation.
....
If the PTI program is unable to differentiate between codefendants, then the program has no merit and should be abandoned. The opposite, however, is true. [168 N.J. Super. at 117.]
It is apparent that the Prosecutor could rely upon the need to prosecute co-defendants as a basis for rejection in every case involving charges against two or more persons. If he did, this would amount to impermissible, automatic exclusion. Furthermore, a co-defendant problem is only a "factor" to be considered when addressing a PTI application. Guideline 3(j). Consequently, reasons supporting the need in a particular case must be enunciated. In the present case, the defendant allegedly promises to cooperate in the prosecution of co-defendants. This promise has not been considered by the Prosecutor. Are there, in fact, particular difficulties that make the prosecution of co-defendants difficult in this case? If so, they have not been stated in the letter of rejection.

E. The Director's Consent

In the present case, the Director, disagreeing with the Prosecutor, has consented to the defendant's PTI admission. *317 The statute, the Rule and the Guidelines are silent as to the effect of this difference of opinion. It is the Director, however, who has the best opportunity to assess the PTI applicant. He, or a member of his staff, conducts the personal interview, speaks to witnesses and reviews documents, solely for PTI purposes. The Prosecutor's information comes from his own criminal investigation, grand jury proceedings and information provided to him by the Director. The Prosecutor's information, other than the Director's material, has been gathered for the purpose of prosecution, not PTI consideration. Consequently, the Director's conclusions must be given significant weight by the Prosecutor and the court. Were the rule otherwise, the Prosecutor would control PTI applications completely. The Directors' opinion would be of little moment. That is not the intention of the Supreme Court or of the Legislature. If it were, the Director's consent would not be a requirement established by Rule and statute. The Prosecutor must acknowledge and consider the Director's consent and set forth the reasons that make it unacceptable. That has not been done in this case.

Conclusion
The Prosecutor's rejection of the defendant constitutes an abuse of discretion. In the language of Bender, it: "(a) was not premised upon a consideration of all relevant factors, [and] (b) was based upon a consideration of irrelevant or inappropriate factors...." Bender, 80 N.J. at 93. In Bender, the court held that in such cases the "normal course is to remand." Since the Prosecutor failed to consider the individual defendant, resorted to an "automatic" and unexplained exclusion based upon prosecutorial policy, the needs of society, the nature of the offense and the difficulty of prosecuting co-defendants and ignored the Director's consent, the matter must be remanded to the Prosecutor for further consideration in the light of this opinion. The remand is to the Prosecutor only. Reconsideration by the Director would not be appropriate since he has consented.
NOTES
[1] Judicially noticed as permitted by State v. Sutton, 80 N.J. 110 (1979). This opinion, providing for a remand, constitutes the required notice to the Prosecutor.