690 A.2d 594

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. WALLACE BAYNES, DEFENDANT–
RESPONDENT.

Argued January 7, 1997—Decided April 1, 1997.

*Mark P. Stalford*, Assistant Prosecutor, argued the cause for appellant (*John Kaye*, Monmouth County Prosecutor, attorney; *Barbara J. Schoenewolf* and *Michael H. Pohl*, Legal Assistants, on the brief).

*James N. Butler, Jr.*, argued the cause for respondent.

*William M.A. Porter* argued the cause for amicus curiae The Association of Criminal Defense Lawyers of New Jersey (*Kevin H. Marino*, attorney).

*Anne C. Paskow*, Assistant Attorney General, submitted a brief on behalf of amicus curiae Attorney General of New Jersey (*Peter G. Verniero*, Attorney General, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

The Court again addresses whether a trial court correctly reversed a prosecutor's rejection of a defendant's admission into a Pretrial Intervention (PTI) Program. In particular, we must determine whether the Monmouth County prosecutor's decision,

based on his stated policy of denying admission into PTI to any defendant charged with possession of a controlled dangerous substance within 1,000 feet of a school zone, constitutes a "patent and gross abuse of discretion."

## I

The facts of this case are undisputed. On September 28, 1994, at approximately 5:30 p.m., defendant, Wallace Baynes, purchased .44 grams of heroin from Jose Morales. The purchase was made outside of the Rainbow Liquor Store, 141 Broadway in Long Branch. At that time, the State was under surveillance by the Long Branch Police Department's narcotics team. The location of the purchase occurred approximately nine hundred feet from the Garfield Primary School.

Baynes was arrested and subsequently indicted by the Monmouth County Grand Jury for Possession of a Controlled Dangerous Substance (CDS), namely, heroin, contrary to *N.J.S.A.* 2C:35–10a(1) and Possession of CDS Within 1,000 Feet of a School Zone, contrary to *N.J.S.A.* 2C:35–10a(1). Drug possession is a third-degree crime.

Defendant claims that he purchased the heroin because he was having difficulty dealing with the serious illness of his mother, who has since passed away. At the time of his application for admission into the Monmouth County Pretrial Intervention Program, defendant was a forty-three year old gainfully employed father of one, residing with and supporting his elderly mother and his seventeen year old son. He had completed two years of college. According to defendant, he had been employed by the same employer for the previous nine years.

Baynes had two prior incidents on his record. In 1969, as a juvenile, he was charged with burglary. He received a six-month continuance and paid $7.50 in restitution. In 1979, Baynes was convicted of disorderly conduct, as a result of a commotion in a movie theater, during which he had allegedly helped a friend, and was fined $25.

The Director of the PTI program accepted Baynes's application for admission. Further, the head of the narcotics team that arrested Baynes did not object to Baynes's diversion. The prosecutor, however, advised Baynes in an April 27, 1995, memorandum that his PTI application was rejected because of that prosecutor's acknowledged policy to deny PTI admission to defendants charged with "school zone offenses," including those involving possession of CDS for personal use.

On June 23, 1995, a hearing was held before the trial court for reconsideration of the prosecutor's decision. In reversing the prosecutor's decision and referring the matter back to the prosecutor for reconsideration, the court observed that "the prosecutor [had] fail[ed] to consider all the relevant factors" in this case. The decision to refer the matter back to the prosecutor follows our past decisions, finding remand to the prosecutor useful where " 'the prosecutorial decision was based upon a consideration of inappropriate factors or not premised upon a consideration of all relevant factors' [or] where the denial resulted from an incorrect evaluation of relevant factors." *See, e.g., State v. Dalglish,* 86 *N.J.* 503, 509–10, 432 *A.*2d 74 (1981) (quoting *State v. Bender,* 80 *N.J.* 84, 94, 402 *A.*2d 217 (1979)).

In a letter to the trial court, the prosecutor advised the court that he had reviewed all the information again and continued to oppose defendant's diversion into PTI. After a second hearing appealing that decision, the trial court ordered Baynes's admission into the PTI program over the prosecutor's objection, stating that

[e]ven giving the prosecutor's decision in this case the 'enhanced deference' to which it is entitled, the decision constitutes a gross and patent abuse of discretion because it is so clearly unreasonable that it shocks the judicial conscience, subverts the goals of PTI, and constitutes a clear error of judgment because it could not have reasonably been made upon a fair weighing of all relevant factors.

[*State v. Baynes,* 287 *N.J.Super.* 467, 475, 671 *A.*2d 211 (Law Div.1995) (citations omitted).]

On appeal to the Appellate Division, the State argued that the prosecutor's decision was based on a consideration of all relevant factors and did not amount to a clear error in judgment. The

Appellate Division upheld the trial court's decision, concluding "that the State's objection to defendant's admission into pre-trial [sic] intervention was in this case an arbitrary exercise of prosecutorial authority." *State v. Baynes*, 287 *N.J.Super.* 336, 671 *A.*2d 146 (App.Div.1996).

We granted the State's petition for certification. 145 *N.J.* 373, 678 *A.*2d 714 (1996).[1]

## II

Earlier this term, we reviewed the history and structure of PTI in *State v. Wallace*, 146 *N.J.* 576, 684 *A.*2d 1355 (1996). PTI is "a diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior." *State v. Nwobu*, 139 *N.J.* 236, 240, 652 *A.*2d 1209 (1995). PTI was initially established by *Rule* 3:28 in 1970, "as authority for the vocational-service pretrial intervention program operated by the Newark Defendants Employment Project." Pressler, *Current N.J. Court Rules*, comment 1 on *R.* 3:28 (1997) (Pressler). By October 1976, the Court had approved programs for twelve counties. *Ibid.* In 1979, the Legislature authorized a state-wide PTI program as part of the Criminal Code of Justice. *Ibid.; see N.J.S.A.* 2C:43–12 to – 22. "The Code provisions generally mirrored the procedures and guidelines previously established under *Rule* 3:28." *Nwobu, supra*, 139 *N.J.* at 245, 652 *A.*2d 1209.

Admission into PTI is based on a recommendation by the criminal division manager, as Director of the PTI Program, with the consent of the prosecutor. *R.* 3:28(c)(1). The Court has provided criteria for making PTI decisions in its Guidelines for Operation of Pretrial Intervention (Guidelines).

---

[1] The Association of Criminal Defense Lawyers of New Jersey was granted leave to participate as *amicus curiae.*

Guidelines 1, 2, 3, and 8 are particularly relevant to this case. Guideline 1 sets forth the purposes of PTI:

(1) to enable defendants to avoid ordinary prosecution by receiving early rehabilitative services expected to deter future criminal behavior; (2) to provide defendants who might be harmed by the imposition of criminal sanctions with an alternative to prosecution expected to deter criminal conduct; (3) to avoid burdensome prosecutions for "victimless" offenses; (4) to relieve overburdened criminal calendars so that resources can be expended on more serious criminal matters; and (5) to deter future criminal behavior of PTI participants.

[*Nwobu, supra*, 139 *N.J.* at 247, 652 *A.*2d 1209.]

■ Guideline 2 provides that "[a]ny defendant accused of crime shall be eligible for admission into a PTI program." Pressler, *supra*, Guideline 2 at 890. Thus, the Court has stated that "PTI decisions are 'primarily individualistic in nature' and a prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation." *Nwobu, supra*, 139 *N.J.* at 255, 652 *A.*2d 1209 (quoting *State v. Sutton*, 80 *N.J.* 110, 119, 402 *A.*2d 230 (1979)).

Guideline 3 refers to and supplements *N.J.S.A.* 2C:43–12(e), which presents seventeen criteria that prosecutors and criminal division managers are to consider in formulating their PTI recommendation. *Wallace, supra*, 146 *N.J.* at 585–86, 684 *A.*2d 1355. Guideline 3(i) clarifies how "the nature of the offense" is to be used in assessing a defendant's PTI eligibility. · That guideline explains that although all defendants are eligible for enrollment in a PTI program, the nature of the crime is only one factor to be considered. Pressler, *supra*, Guideline 3 at 891–92. Moreover, Guideline 3(i) states that there is a presumption against acceptance into a program when "the crime was (1) part of organized criminal activity; or (2) part of a continuing criminal business or enterprise; or (3) deliberately committed with violence or threat of violence against another person; or (4) a breach of the public trust." *Ibid.* A presumption against acceptance into a PTI program also exists when the defendant is "charged with a first or second degree offense or sale or dispensing of Schedule I or II narcotic drugs ... [and is] not drug dependent." *Ibid.*

█ Finally, Guideline 8 requires a judge, prosecutor, or criminal division manager, making a PTI decision, to provide the defendant with a statement of reasons justifying the decision, as well as demonstrating that all of the facts have been considered. Pressler, *supra*, Guideline 8 at 897–98. That statement "may not simply 'parrot' the language of relevant statutes, rules, and guidelines." *Nwobu, supra*, 139 *N.J.* at 249, 652 *A.*2d 1209 (citing *Sutton, supra*, 80 *N.J.* at 117, 402 *A.*2d 230). Additionally, the statement cannot be vague; it must be sufficiently specific to provide the defendant with an opportunity to demonstrate that the reasons are unfounded. *Ibid.* (citing *State v. Maddocks*, 80 *N.J.* 98, 109, 402 *A.*2d 224 (1979)).

█ The decision to divert a defendant from criminal prosecution implicates both judicial and prosecutorial functions. *State v. DeMarco*, 107 *N.J.* 562, 566, 527 *A.*2d 417 (1987). It "is an exercise of quasi-judicial power." *State v. Leonardis*, 71 *N.J.* 85, 115, 363 *A.*2d 321 (1976) (*Leonardis I*). Judicial review of the prosecutor's PTI decision is strictly limited, but necessary because "PTI involves far more than merely an exercise of the charging function." *State v. Leonardis, supra*, 73 *N.J.* 360, 379, 375 *A.*2d 607 (1977) (*Leonardis II*). "It is one thing not to charge and let the accused go totally free, but it may be quite another to withhold a charge, and hence not to invoke the jurisdiction of the court system, on condition that an uncharged, untried, unconvicted person submit to a correctional program." *Ibid.* (quoting *Pretrial Intervention Legal Issues: A Guide to Policy Development* 12 n. 4 (1974)).

█ Earlier this term, we reaffirmed our expectation that "a prosecutor's decision to reject a PTI applicant 'will rarely be overturned.'" *Wallace, supra*, 146 *N.J.* at 585, 684 *A.*2d 1355 (quoting *Leonardis II, supra*, 73 *N.J.* at 380, 375 *A.*2d 607). "[A prosecutor's] decision is to be afforded great deference. In fact, the level of deference which is required is so high that it has been categorized as 'enhanced deference' or 'extra deference.'" *Nwobu, supra*, 139 *N.J.* at 246, 652 *A.*2d 1209 (quoting *State v.*

*Kraft,* 265 *N.J.Super.* 106, 111, 625 *A.2d* 579 (1993)). Absent evidence to the contrary, a reviewing court must assume that all relevant factors were considered by the prosecutor's office. *Id.* at 249, 625 *A.2d* 579 (citing *Dalglish, supra,* 86 *N.J.* at 509, 432 *A.2d* 74). That presumption makes it difficult to reverse a prosecutor's decision. *Ibid.*

A reviewing court may order a defendant into PTI over the prosecutor's objection, only if the defendant can " 'clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of ... discretion.' " *Wallace, supra,* 146 *N.J.* at 582, 684 *A.2d* 1355 (citation omitted). In *Bender, supra,* the Court defined the "patent and gross abuse of discretion" standard:

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [80 *N.J.* at 93, 402 *A.2d* 217.]

The third prong of the abuse of discretion test, that the prosecutor made a clear error of judgment, is satisfied where the prosecutor's decision "is one that is 'based on appropriate factors and rationally explained,' but 'is contrary to the predominant views of others responsible for the administration of criminal justice.' " *Nwobu, supra,* 139 *N.J.* at 253, 652 *A.2d* 1209 (quoting *Dalglish, supra,* 86 *N.J.* at 510, 432 *A.2d* 74).

## III

### A.

In this case, the prosecutor's rejection of Baynes's PTI application falls under categories (a) and (c), as set forth in *Bender. Bender, supra,* 80 *N.J.* at 93, 402 *A.2d* 217. First, the prosecutor's rejection in this case was not based on all of the relevant factors. *See, e.g., ibid.;* Pressler, *supra,* Guideline 2 at

890. After the initial remand for reconsideration by the trial court, the prosecutor claimed to have considered all of the relevant factors. We do not doubt his veracity, in the sense that he re-read the application and the police report. He could not, however, have considered all relevant factors, because the *per se* rule under which he made his decision had effectively denied Baynes's application from the moment Baynes was charged with possession of CDS in a school zone.

By their nature, *per se* rules require prosecutors to disregard relevant factors, contrary to the guidelines, and when a defendant demonstrates that a prosecutor has relied on such a rule, the presumption that the prosecutor has considered all relevant facts is overcome. *See, e.g., Wallace, supra,* 146 *N.J.* at 584, 684 *A.*2d 1355 ("We presume that a prosecutor considered all relevant factors, absent a demonstration by the defendant to the contrary."). As a result, the June 23, 1995, memorandum denying Baynes's application was merely an impermissible "parrot-like" recitation of the language of relevant statutes, rules, and guidelines. *See, e.g., Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d 1209; *Sutton, supra,* 80 *N.J.* at 117, 402 *A.*2d 230.

The State correctly points out that prosecutors may rely on the nature of the offense, in "appropriate circumstances," as the sole basis for making PTI decisions. *See, e.g., Leonardis II, supra,* 73 *N.J.* at 382, 375 *A.*2d 607. Although caselaw supports the proposition that certain offensive conduct can outweigh all other factors considered, no court has indicated that possession of CDS for personal use is an "appropriate circumstance" that alone can justify denying PTI.

Where courts have found a prosecutor's reliance on the nature of the offense charged to be an appropriate basis for a PTI decision, the crime was of a more serious nature than possession of CDS for personal use. In *Wallace, supra,* for example, we held that the assistant prosecutor's denial of the defendant's PTI application did not amount to a clear error of judgment. Wallace had entered his former girlfriend's house with a loaded gun and

threatened to kill her. He was charged with second-degree possession of a firearm for an unlawful purpose and third-degree making of terroristic threats. 146 *N.J.* at 579–80, 684 *A.*2d 1355. In supporting her decision, "the prosecutor primarily relied on a prosecutorial guideline that discourages PTI for those defendants charged with *either first or second degree offenses.*" *Id.* at 588, 684 *A.*2d 1355 (emphasis added) (citing *R.* 3:28, Guideline 3(i)). In addition, the prosecutor relied on Guideline 3(i)(3), recommending that individuals charged with acts committed with violence or the threat of violence be denied PTI. *Ibid.*

Likewise, in *State v. Barrett,* 157 *N.J.Super.* 96, 384 *A.*2d 558 (App.Div.1978), the Appellate Division found that that defendant's behavior could reasonably have been considered to be part of an organized criminal activity and, as such, "provid[ed] an acceptable basis for finding him disqualified for diversionary treatment." 157 *N.J.Super.* at 102, 384 *A.*2d 558. In reaching this conclusion, the court noted that under Guideline 3(i) there is a presumption against admission into PTI for defendants charged with crimes considered to be a part of organized criminal activity. *Ibid.*

In *Kraft, supra,* the Appellate Division was again called upon to determine whether the prosecutor correctly based his refusal to divert the defendant into PTI on the nature of the offense charged. In that case the defendant had been indicted for third-degree burglary and fourth-degree taking, and the prosecutor denied diversion due to the seriousness of the offense and the need to deter other residential burglaries. The Appellate Division agreed: "It cannot reasonably be disputed that the burglary of a residence is a serious offense. Nor can it be earnestly debated that such an offense accounts for a legitimate source of fear and anxiety on the part of the homeowners." 265 *N.J.Super.* at 116, 625 *A.*2d 579.

Because burglary of a home is similar to robbery, in the sense that it raises the public's concern regarding the threat of personal safety, it is a crime that implicates Guideline 3(i). *Id.* at 117, 625 *A.*2d 579 (finding that under circumstances a significant potential

for violence existed). Moreover, Guideline 3(j), stating that the impact of diversion on the prosecution of codefendants must be considered, was implicated in *Kraft. Id.* at 118, 625 *A.*2d 579. Thus, the court held that the case presented "appropriate circumstances" for the prosecutor's refusal to divert the defendant into PTI based solely on the nature of the offense charged. *Id.* at 115, 625 *A.*2d 579.

Finally, in *State v. Litton,* 155 *N.J.Super.* 207, 382 *A.*2d 664 (1977), the prosecutor denied PTI solely on the basis that the defendant was charged with a "sex crime." The Appellate Division "regard[ed] [Litton] as being a case where it was 'appropriate' for the prosecutor to base his rejection on the nature of the offense." 155 *N.J.Super.* at 216, 382 *A.*2d 664.

> In their collective intent, as supplemented by the prosecutor's statements before the trial court, his reasons amount to an expression of concern that this offense, based on the expected evidence, was not free of the threat of violence. As he said, "hardly anything is known about sex offense crimes." ... [W]e are unable to say that this offense did not arise from distinctly assaultive motivations. Guideline 3(i)(3) recommends rejection of the application under those circumstances.
>
> [*Ibid.*]

 Under the caselaw of this jurisdiction, it is, therefore, appropriate for prosecutors to base their rejections solely on the nature of an offense for which the Guidelines express a presumption against admission (as in *Wallace, Barrett, Litton,* and *Kraft*). Our prior opinions indicate that possession of CDS for personal consumption does not fall into either of these categories.

In *Bender, supra,* the "defendant's rejection was premised wholly upon [the prosecutor's] perception of the nature of the offense charged in relation to the Guidelines. In the prosecutor's opinion, defendant's theft of cocaine was both '[1] part of a continuing criminal business or enterprise; [and] ... [2] a breach of the public trust....'" 80 *N.J.* at 94, 402 *A.*2d 217 (citing Guideline 3(i)(2), (4)).

In evaluating the defendant-pharmacist's diversion of cocaine from his employer for his personal use, the *Bender* Court stated that the crimes engaged in by the defendant could not be charac-

terized as a continuing criminal business. *Id.* at 95, 402 *A.2d* 217. The Court asserted that

> [o]ne of the main purposes of PTI is "[t]o provide a mechanism for permitting the least burdensome form of prosecution possible for defendants charged with 'victimless' offenses." Clearly, this purpose would be entirely frustrated were persons who unlawfully consume controlled dangerous substances over a prolonged time span to be deemed engaged in a continuing criminal enterprise and hence 'generally' to be rejected pursuant to *Guideline* 3(i)(2). Although in the present case defendant's crime was not truly 'victimless'—inasmuch as his cocaine diversions harmed his employer as well as himself—the underlying rationale of *Guideline* 1(c) is nevertheless applicable.
>
> [<em>Id.</em> at 96, 402 <em>A.2d</em> 217 (citation omitted).]

Moreover, the Court rejected "the State's contention that defendant's crime constituted a 'breach of the public trust.'" *Ibid.* Although, as a pharmacist, the defendant was

> "entrust[ed] ... with the dispensing of controlled dangerous substances in order that the health and welfare of the public not be undermined through indiscriminate and unsupervised consumption of drugs[,] ... [d]efendant's cocaine diversions were not intended to nor did they cause injury to the public in general or to any particular segment thereof. The cocaine was personally consumed, not distributed to third parties. *Only defendant, himself, and his immediate employer were victimized.*"
>
> [<em>Ibid.</em> (citation omitted) (emphasis added).]

**B.**

▇▇▇ In addition to satisfying the first category of abuse of discretion set forth in *Bender,* the prosecutor's veto also fulfills the third, i.e. it was a "clear error in judgment." A prosecutor will be found to have made a "clear error in judgment," when the decision was premised on appropriate factors and rationally explained but is contrary to the predominate views of others responsible for the administration of justice. *See, e.g., Nwobu, supra,* 139 *N.J.* at 253, 652 *A.2d* 1209. Although a reviewing court cannot substitute its own judgment for that of the prosecutor, others responsible for the administration of justice in New Jersey hold contrary views of how first-time offenders charged with possession of drugs for personal use should, as a class, be treated.

The 1987 Comprehensive Drug Reform Act simply does not indicate the intent prescribed to it by the Monmouth County

prosecutor. The Act's preamble sets forth the policy of the State with respect to drug offenders and the purposes for which the Act was promulgated:

It is the intention of the Legislature to provide for the strict punishment, deterrence and incapacitation of *the most culpable and dangerous drug offenders,* and to facilitate where feasible the rehabilitation of drug dependent persons so as ultimately to reduce the demand for illegal controlled dangerous substances and the incidence of drug-related crime.

[*N.J.S.A.* 2C:35–1.1(c) (emphasis added).]

The Legislature further explains that

[i]t is also the policy of this State to afford special protection to children from the perils of drug trafficking, to ensure that all schools and areas adjacent to schools are kept free from drug distribution activities, and to provide especially stern punishment for those drug offenders who operate on or near schools and school buses, who distribute to juveniles, or who employ juveniles in a drug distribution scheme.

[*Ibid.*]

In restructuring drug offenses, in light of these policies, the Legislature created a new crime, *N.J.S.A.* 2C:35–7, covering possession with intent to distribute or actual distribution of drugs in a school zone. Under that section, proof that the offensive conduct occurred within a school zone is an element of the offense, and if the defendant is found guilty a jail term must be imposed as well as a minimum term. Cannel, *New Jersey Criminal Code Annotated,* comments 2, 6 on *N.J.S.A.* 2C:35–7 (1996). The penalty structure for this type of offense is similar to that for second-degree offenses for which admission to PTI is presumptively unavailable.

Possession of CDS in a school zone, on the other hand, is not a separate crime. Rather, it is a sentencing factor that requires the court to impose one hundred hours of community service as a condition of probation if the defendant is not given a prison term. Cannel, *supra,* comments 1 on *N.J.S.A.* 2C:35–10. Despite the wording of Count Two of the indictment, Baynes is not charged with two counts of possession of CDS for personal use (i.e., one for possession in general and a second for possession in a school zone). Instead, he is charged with one count of possession

contrary to *N.J.S.A.* 2C:35–10a, which carries an enhanced sentence because the offense occurred in a school zone.

The Monmouth County Prosecutor's Office is the only prosecutor's office in the State to have adopted the policy that a simple possession offense makes a defendant ineligible for admission into PTI. Nor has the Attorney General adopted such a policy. *See* Attorney General's Supplemental Directive For Prosecuting Cases Under the Comprehensive Drug Reform Act (Jan. 6, 1997) [hereinafter Directive]. Specifically, Section 6(c) of the Directive prohibits a prosecutor from consenting to PTI for a person charged with simple possession of drugs within 1,000 feet of school property unless, as a condition of PTI, the defendant serves not less than one hundred hours of community service and pays a Drug Enforcement and Demand Reduction penalty. *Id.* at 5. Because it imposes those specific preconditions on PTI admission for applicants charged with simple possession in a school-zone, the Directive embodies a conscious policy choice by the Attorney General: allow PTI candidates charged with simple possession in a school zone into PTI, but only if they satisfy the mandatory non-incarcerative aspects of the program. Clearly, that policy is inconsistent with the Monmouth County prosecutor's policy of excluding from PTI all defendants charged with simple possession of drugs in a school zone.

In fact, early diversion programs were begun in many jurisdictions in order to cope with both the non-addict first offender and the drug-dependent defendant. *See, e.g.,* John P. Bellassai & Phyllis N. Segal, Note, *Addict Diversion: An Alternative Approach for the Criminal Justice System,* 60 *Geo. L.Rev.* 667 (1972) (cited in *Leonardis I, supra,* 71 *N.J.* at 96–97, 363 *A.*2d 321, for proposition that diversion serves to dispose quickly and inexpensively of cases that are more effectively handled without full criminal disposition, permitting courts to focus their resources where deterrence and rehabilitation can best be achieved by ordinary criminal processing).

## C.

As a first-time offender charged with a non-violent, third-degree offense, Baynes is eligible for diversion into the PTI program. By abandoning his discretion in favor of a *per se* rule, the prosecutor made a decision unsupported by the legislative purpose behind both the PTI Statute and the Comprehensive Drug Reform Act, by the Guidelines, and by caselaw. Thus, the rejection of Baynes's PTI application was an abuse of discretion under two of the three categories of the *Bender* test.

An abuse of discretion in a PTI case is elevated to a patent and gross abuse of discretion when the "prosecutorial error . . . will clearly subvert the goals underlying Pretrial Intervention." *Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217. As discussed in the trial court's opinion, Baynes's admission into PTI fulfills *all five* of its purposes. *Baynes, supra* 287 *N.J.Super.* at 476–77, 671 *A.*2d 211. Additionally, the Legislature made all defendants initially eligible for PTI, and the *per se* rule effectively eliminates a whole category of defendants from consideration by the prosecutor. *See* Pressler, *supra,* Guideline 2 at 890; *Leonardis I, supra,* 71 *N.J.* at 112, 363 *A.*2d 321 (holding that Bergen County criteria for admission into PTI failed to conform with rehabilitative purpose of *Rule* 3:28, because it precluded from consideration for PTI all defendants charged with "heinous offenses," including *sale* of CDS). Baynes's rejection, thus, was a patent and gross abuse of discretion. Accordingly, the trial court correctly ordered Baynes's admission into the program.

## IV

Prosecutorial discretion in reviewing PTI applications does not permit exclusion of PTI applicants solely because they are subject to the "school zone" sentencing enhancement. Possession of CDS for personal use within 1,000 feet of a school cannot in every instance be an "appropriate circumstance" to rely solely on the nature of the offense in rejecting a PTI application.

In reaching our decision, we need not discuss the evidentiary argument raised by the State for the first time before this Court. The evidence under dispute is not needed to resolve the legality of the policy. Additionally, nothing in the opinions below suggests that this evidence formed the basis for the lower courts' decisions.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.