983 A.2d 1137 (2009)
410 N.J. Super. 589
STATE of New Jersey, Plaintiff-Respondent,
v.
Dana RONE, Defendant-Appellant.
DOCKET NO. A-5850-07T4, A-6192-07T4.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 2009.
Decided December 9, 2009.
*1139 Patricia Bombelyn argued the cause for appellant (Perez & Bombelyn, attorneys; Ms. Bombelyn, New Brunswick, on the briefs).
Hilary L. Brunell, Executive Assistant Prosecutor, argued the cause for respondent (Paula T. Dow, Essex County Prosecutor, attorney; Ms. Brunell, on the briefs).
Before Judges WEFING, GRALL and LeWINN.
The opinion of the court was delivered by
WEFING, P.J.A.D.
State v. Rone, A-5850-07T4, and State v. Rone, A-6192-07T4, are separate appeals arising out of the same factual complex. In A-5850-07T4, defendant appeals from her conviction for the disorderly persons offense of obstruction of justice, N.J.S.A. 2C:29-1. In A-6192-07T4, she appeals from the trial court's order declaring that her conviction resulted in the forfeiture of her position as a member of the Newark City Council, N.J.S.A. 2C:51-2. We consolidate these appeals for purposes of this opinion. After reviewing the records in both appeals in light of the arguments presented, we affirm her conviction and the order of forfeiture. We deal first with A-5850-07T4.

I
Defendant's conviction for obstruction of justice rests upon an incident that occurred on the night of December 20, 2006, in Newark. Officer Wilson of the Rutgers University police was on mobile patrol when he saw a vehicle driving on Washington Street near its juncture with Broad Street change lanes without giving a signal. Officer Wilson signaled the car to pull over. As he pulled up behind the vehicle, he noted that there were two occupants in the car, that it had a temporary registration placard in the rear window and that the driver was not wearing a seat belt. In accordance with the department's procedures, he called for back-up before approaching the car. Officer Derek Fuerstein arrived to assist.
The two officers then approached the car, Officer Wilson on the driver's side, Officer Fuerstein on the passenger's side. While doing so, Wilson noted that the temporary registration placard in the rear window had expired.
Music was playing loudly in the car, the driver and passenger were laughing and *1140 the driver was speaking on his cell phone. Officer Wilson told the driver, later identified as Jamil Grant, to get off the phone. Grant did not immediately do so but continued his conversation. Wilson had to repeat his direction several times before Grant obeyed. Wilson also told Grant that because the registration had expired, his vehicle could be towed. Grant eventually turned off his phone and produced a Florida driver's license.
Wilson was returning to his vehicle to investigate the status of Grant's license when another vehicle approached at a high rate of speed, pulled up and stopped in a lane of traffic parallel to and between Wilson's police car and Grant's car. Defendant got out, said she was a member of the Newark City Council, and demanded to know why Wilson had stopped Grant's car. Wilson told defendant to move her vehicle out of the lane of traffic and to get away from Grant's car. She did not comply, continuing to say she was a member of the City Council and asking why Grant had been stopped. Wilson asked for identification, but defendant said she did not have any with her. The vehicle she was driving, however, had license plates indicating it was a municipal vehicle.
Wilson had never confronted a situation such as this, and he called for the assistance of a supervisor. Acting Sergeant Joseph Churchill of the university police came to the scene and talked with defendant, who eventually pulled her car to the side. She agreed in her testimony that some eight to ten minutes had elapsed until she moved her car.
She continued, however, to stand by Grant's car and did not move when told several times to do so; she demanded to know why Grant had been stopped. Eventually, she moved from the street to the sidewalk. She announced that she was calling the "real" police and telephoned the Newark Police Department, identified herself as a councilwoman and asked for a police unit to be sent to the scene.
During the course of the event, she also mentioned that she had just attended a meeting with the Provost of the Rutgers campus. Officer Wilson testified that he was concerned that he might lose his job with the Rutgers police.
Sergeant Churchill testified that after defendant made her call to the Newark police, three patrol cars, a sergeant and a captain, all members of the Newark police department, eventually arrived at the scene.
Jamil Grant, the driver stopped by Wilson, is defendant's nephew. Grant and defendant both testified that Grant and his friend had been at her house shortly before this incident. The two young men left intending to pick up another friend and go to a night club. Grant testified that when he was stopped by the police, some period of time elapsed before anyone approached his car. He called defendant to tell her that he had been stopped and that they were just sitting in the car waiting. She told him to remain in the car, stay calm and keep his hands where the police could see them.
Defendant testified Grant was talking to her on the phone when she heard the officer yelling at Grant to get off the phone. When he hung up without saying anything further to her, she called back to make sure he was all right. She said she heard the officer yelling to get off the phone and Grant again hung up. She said she was concerned for her nephew's safety and immediately left her home without her purse to drive to the scene. She insisted her entire purpose was to make sure that nothing untoward happened to her nephew.
*1141 The entire incident took approximately fifty to fifty-five minutes. At the end, Officer Wilson placed defendant under arrest and charged her with obstruction of justice.
In light of her position with the Newark City Council, trial of this matter was transferred from the Newark Municipal Court to the Fairfield Municipal Court. The municipal court judge found defendant guilty, and she appealed to the Law Division, where she was again found guilty, following a trial de novo. The court imposed a fine of $250, $50 in court costs, a $50 Violent Crimes Compensation Board assessment, N.J.S.A. 2C:43-3.1, and a $75 Safe Neighborhood Services Fund assessment, N.J.S.A. 2C:43-3.2. This appeal followed.
On appeal, defendant raises the following arguments:
POINT I THERE WAS INSUFFICIENT AND INSUBSTANTIAL EVIDENCE PRESENTED TO SUPPORT THE LOWER COURT'S FINDINGS THAT RONE PURPOSELY INTERFERED, PHYSICALLY AND BY INTIMIDATION, WITH OFFICER WILSON LAWFULLY PERFORMING AN OFFICIAL FUNCTION
POINT II THE LOWER COURT COMMITTED PLAIN ERROR IN FAILING TO CONSIDER THE LESSER INCLUDED CHARGE OF FAILURE TO OBSERVE THE DIRECTION OF AN OFFICER, CONTRARY TO N.J.S.A. 39:4-57. (Not Raised Below)

A
Neither contention requires extended discussion. In defendant's initial argument she contends that she did not purposely physically interfere with Officer Wilson's investigation, nor did she intimidate him. She stresses, as she did below, that she acted out of concern for her nephew's safety. This concern, she said, was heightened by the then-recent shooting in New York City of Sean Bell by members of the New York City police.[1]
Defendant's argument, however, equates her stated motive with purposeful conduct. The two concepts are not identical. One acts purposely "if it is his conscious object to engage in conduct of that nature or to cause such a result." N.J.S.A. 2C:2-2b(1). This statutory definition describes an actor's mental state while committing an act, not the motivation leading an actor to commit that certain act. An actor's motivation may become relevant when a court turns to the question of an appropriate penalty, but it does not bear on the question of whether an individual acted purposely.
Her argument, moreover, overlooks the fact that her placement of her vehicle physically interfered with Officer Wilson completing his tasks, as did her initial insistence on standing next to Grant's car, despite having been told to move away from it. Wilson testified that defendant's conduct turned what should have been a routine stop, with a summons being issued, taking five to ten minutes, into a protracted event, requiring almost an hour to complete.
We consider State v. Perlstein, 206 N.J.Super. 246, 253, 502 A.2d 81 (App.Div. 1985), instructive. In that case, we upheld the defendant's conviction for obstruction of justice "when she attempted to move her car contrary to [the officer's] directions." *1142 Ibid. There is no analytical distinction between moving a car in the face of instructions not to do so and not moving a car in the face of instructions to do so in terms of the effect upon an ongoing police investigation.
We are satisfied the record contains ample support for defendant's conviction for obstruction of justice.

B
Defendant's second contention is that the trial court should have considered the motor vehicle offense of N.J.S.A. 39:4-57 as a lesser-included offense of obstruction of justice. Defendant did not raise this issue with the trial court.
N.J.S.A. 2C:1-8d(1) through (3) define a lesser-included offense. Under subsection (1), a lesser-included offense is one that may be "established by proof of the same or less than all the facts required to establish the commission of the offense charged." It is evident that the motor vehicle offense of failing to observe an officer's direction cannot qualify as a lesser-included offense of obstruction of justice under that language. The proofs required for each offense are entirely separate.
Subsection (2) is wholly inapplicable. Under this subsection, a conspiracy to commit a charged offense or an attempt to commit that charged offense is a lesser-included offense. Neither conspiracy nor attempt was involved in the present matter.
Subsection (3) provides the final definition of a lesser-included offense as one that "differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission." We agree with the State that the obstruction statute, N.J.S.A. 2C:29-1, and the motor vehicle statute, N.J.S.A. 39:4-57, contain different elements and are directed to different harms. Subsection (3) of the statute affords no basis to treat the motor vehicle offense under N.J.S.A. 39:4-57 as a lesser-included offense of N.J.S.A. 2C:29-1.
There was no error by the trial court in not sua sponte amending the charge to the motor vehicle offense.

II
We turn now to the issues presented in A-6192-07T4 in which defendant appeals from a trial court order which denied the motion of the Essex County Prosecutor to waive the forfeiture provisions of N.J.S.A. 2C:51-2 and directed that defendant forfeit her position as member of the Newark City Council as a consequence of her conviction for obstruction of justice. At oral argument, defendant explained that she did not seek to unseat her successor and to be restored to her seat on the City Council. Rather, she sought to be relieved of the permanent consequences attached to an order of forfeiture.
We have already set forth the factual background to defendant's conviction for obstruction of justice, and we shall not repeat it.
After defendant's conviction in the Law Division, the Prosecutor's Office took the position that defendant had forfeited her office as a councilwoman. Defendant opposed this application. Prior to the matter being argued in the trial court, the Attorney General advised the Prosecutor's Office that whether to seek a waiver of forfeiture rested in the Prosecutor's discretion. Based upon that advice, the Prosecutor's Office then filed its own application seeking waiver. The trial court, however, denied the waiver application, and defendant filed a notice of appeal. Although the *1143 State did not file a separate notice of appeal, it also contends that the trial court erred when it ruled that defendant must forfeit her position in light of her conviction for obstruction of justice. Despite the fact that both parties urge us to reverse the trial court's order, we are satisfied that the trial court was entirely correct in its conclusion.
Defendant raises the following contentions on appeal:
POINT I THE LOWER COURT'S REJECTION OF THE PROSECUTOR'S WAIVER APPLICATION DEMANDS REVERSAL BECAUSE IT MISAPPLIED THE LAW PERTAINING TO WAIVER OF FORFEITURE.
POINT IA BY ENDORSING AND ADOPTING THE STATE'S INITIAL APPLICATION FOR FORFEITURE AS THE POLESTAR FOR ITS REJECTION OF THE PROSECUTOR'S WAIVER APPLICATION, THE LOWER COURT ABUSED ITS DISCRETION AND ROBBED THE DECISION OF EVEN A PRETENSE OF FAIR AND OBJECTIVE CONSIDERATION OF WHETHER `GOOD CAUSE' FOR WAIVER WAS SHOWN.
POINT IB THE LOWER COURT ABUSED ITS DISCRETION BY USING THE LEGISLATIVE PURPOSE OF THE FORFEITURE PROVISION TO SUPPORT IT'S [sic] DENIAL OF THE STATE'S WAIVER APPLICATION; ANY RELIANCE UPON LEGISLATIVE PURPOSE BY THE LOWER COURT REQUIRED APPLICATION OF THE LEGISLATIVE PURPOSE PERTAINING TO THE WAIVER PROVISION WHICH WAS THE ISSUE BEFORE THE COURT.
POINT IC THE LOWER COURT ADMITTED TO COMPLETELY PREJUDGING THE REQUIRED WAIVER ANALYSIS WHEN IT STATED IT WOULD HAVE RULED AGAINST THE STATE `EVEN IF' IT ORIGINALLY APPLIED FOR WAIVER; THUS NO LEVEL OF `GOOD CAUSE' SHOWN ON FLAGG FACTORS COULD HAVE SATISFIED THE LOWER COURT.
POINT II THE LOWER COURT'S APPROACH TO `GOOD CAUSE' ANALYSIS WAS ERRONEOUS AND CONSTITUTED AN ABUSE OF DISCRETION.
POINT IIA THE LOWER COURT'S FAILURE TO APPLY THE `GOOD CAUSE' STANDARD TO THE STATE'S FLAGG FACTOR ANALYSIS (BY SUBSTITUTING ITS OWN VIEW OR SELECTIVELY DISREGARDING OR RECONSTRUCTING FACTS ON THE FLAGG FACTORS WITHOUT ANY BASIS WHATSOEVER AND SHIFTING THE BURDEN OF PROOF).
Flagg Factors One and Two: The Totality of Circumstances Surrounding the Event and The Nature of the Offense (including it's [sic] gravity and substantiality, whether it was a single or multiple offense and whether it was continuing or isolated)
Flagg Factor Three: Quality of Moral Turpitude or Degree of Guilt or Culpability
Flagg Factors Four and Five: The Duties of the Employee and The Relationship Between the Offense and the Employee's Duties
Flagg Factor Six: The Employee's Length of Service

*1144 Flagg Factor Seven: The Employer's Desires
Flagg Factor Eight: The Need and Interests of the Victim and Society, Including Consideration of the Victim's Desires
Flagg Factors Nine and Ten: The Extent to Which the Employee's Offense Constitutes Part of a Continuing Pattern of Anti-Social Behavior and The Employee's Prior Record of Convictions and Disciplinary Infractions
Flagg Factor Fifteen: Whether Waiver of Forfeiture of Office Would Undermine Public Confidence in the Integrity of Important Governmental Functions, Including But Not Limited to Law Enforcement Function
POINT III THE LOWER COURT'S FINDING THAT THE UNDERLYING OFFENSE `TOUCHED UPON' RONE'S OFFICE WAS ERRONEOUS AND REQUIRES REVERSAL

A
The first question, analytically, is whether defendant's conviction for obstruction of justice touched on her position as a member of the City Council. Defendant asserts that it did not and that as a consequence, the forfeiture statute is inapplicable. The State argued, and the trial court held, that her conviction did touch on her office, thus triggering consideration of forfeiture. We agree with the trial court's conclusion.
The forfeiture statute applies to persons convicted of an offense "involving or touching such office, position or employment." N.J.S.A. 2C:51-2(a)(2). Subsection (d) of the statute permanently disqualifies from "any office or position of honor, trust or profit" of the State or its subdivisions "any person convicted of an offense involving or touching on his public office, position or employment." N.J.S.A. 2C:51-2(d).
The New Jersey Supreme Court had occasion to define "touch on" in McCann v. Clerk of Jersey City, 167 N.J. 311, 771 A.2d 1123 (2001). McCann, toward the end of his second term as mayor of Jersey City, was convicted in federal court of several offenses, including tax evasion and mail fraud. Id. at 316, 771 A.2d 1123. After serving his prison sentence, he sought to run again for the position of mayor. Id. at 317, 771 A.2d 1123. The City Clerk deemed that McCann had, by his convictions, forfeited his right to public office and would not accept his petition to be placed upon the ballot; McCann sued. Ibid. He argued that because his crimes did not touch on his position as mayor, he should not be precluded from seeking the position again. Id. at 320, 771 A.2d 1123.
The Court was thus called upon to consider whether these convictions touched on McCann's mayoral office, and it concluded they did not. It rejected the view this court had expressed, that McCann's convictions touched on his office because they "demonstrate[d] his untrustworthiness and disrespect to government agencies." Id. at 321, 771 A.2d 1123. The Court held the phrase had a narrower focus.
That phrase [touch on] implies, in our view, a determination on the part of the Legislature to limit the scope of the disqualification provision to crimes that are related directly to an individual's performance in, or circumstances flowing from, a specific public office or position held by that individual. When an individual commits a crime wholly unrelated to his or her public office, the crime ordinarily cannot be characterized as involving or touching on the public office.[2]

*1145 [Ibid.]
Defendant stresses that the record does not contain any findings of dishonesty or untrustworthiness on her part; this, she contends, demonstrates that her actions on the night in question do not touch on her office. This, however, is not the test enunciated by the McCann Court; an offense touches on an individual's office if it flows from that office.
Indeed, this portion of the statute was amended after the Supreme Court issued its opinion in McCann. This section of the statute now specifically provides, "As used in this subsection, `involving or touching on his public office, position or employment' means that the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person." N.J.S.A. 2C:51-2d. The Statement accompanying this amendment notes that the definition is in accordance with the Court's decision in McCann, codifying it. Senate Statement to S. 14 (enacted as L. 12007, c. 49, § 5).
The offense need not take place at work or while on duty to touch on an individual's position. Moore v. Youth Corr. Inst. at Annandale, 119 N.J. 256, 574 A.2d 983 (1990) (holding that a corrections officer who harassed his supervisor at his home forfeited his position). There must be some nexus between the individual's public office and the offense committed. State v. Hupka, 407 N.J.Super. 489, 510, 971 A.2d 1102 (App.Div.2009) (holding that a sheriff's officer who pled guilty to fourth-degree criminal sexual contact was not permanently barred from public employment; he "did not use or threaten the use of his offices in any way to commit the offense. He did not display or utilize any indicia of his office[] at any time. The offense was not related to any circumstance that flowed from defendant['s office.]").
Here, in contrast, defendant repeatedly announced her public position and pointed to her use of a municipal vehicle. She used her position to denigrate the university's police force, and dissatisfied with the manner in which the university police were responding to her, summoned what she termed the "real" police, the City's municipal police. We agree with the trial court that defendant's offense did indeed touch on her position as a member of the city council.
Because defendant's conviction for obstruction of justice flowed from her position as a member of the city council, the provisions of the forfeiture statute were triggered.

B
Forfeiture of public office is governed by N.J.S.A. 2C:51-2. Insofar as pertinent to the issues in this matter, the statute provides:
(a) A person holding any public office, position, or employment, elective or appointive ... who is convicted of an offense shall forfeit such office, position or employment if:
. . .
(2) He is convicted of an offense involving or touching such office, position or employment
. . .

*1146 (e) Any forfeiture or disqualification under subsection a ... which is based upon a conviction of a disorderly persons or petty disorderly persons offense may be waived by the court upon application by the county prosecutor or the Attorney General and for good cause shown.
Although, as we have noted, both parties assert that the trial court erred in denying the motion to waive forfeiture, they present different rationales in support of their respective positions that the trial court's order should be reversed. Defendant asserts that the proper analysis is whether good cause existed to waive forfeiture; she maintains that it did. The State, on the other hand, asserts that the trial court employed the wrong standard of review when it considered the prosecutor's position that waiver of forfeiture was appropriate.
We are satisfied that defendant's threshold analysis, that is, that the critical question is whether good cause exists to waive forfeiture, is correct and that the State's position, that the prosecutor's decision to seek waiver is entitled to enhanced deference, is incorrect. That defendant applies the correct analytical framework does not advance her cause, however, for we are equally satisfied that good cause was not demonstrated. The State contends that this matter is akin to a prosecutorial decision to deny an application for admission to pretrial intervention (PTI); such a prosecutorial decision is entitled to enhanced deference on judicial review. State v. Baynes, 148 N.J. 434, 443, 690 A.2d 594 (1997); State v. Bender, 80 N.J. 84, 97, 402 A.2d 217 (1979). "A reviewing court may order a defendant into PTI over the prosecutor's objection, only if the defendant can `clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of ... discretion.'" Baynes, supra, 148 N.J. at 444, 690 A.2d 594 (quoting State v. Wallace, 146 N.J. 576, 582, 684 A.2d 1355 (1996)).
In our judgment, the prosecutor's position is contrary to the views expressed by the Supreme Court.
Although the authority to seek waiver is vested in the Attorney General and county prosecutors, we are convinced that the Legislature did not intend the discretion to seek waiver to be subject to more limited review simply because it is to be exercised by law enforcement officials. Given that the discretionary decision whether or not to seek a waiver is dissimilar to those determinations typically made by prosecutors in their law enforcement capacity, and is more akin to prosecutorial discretion in sentencing-related determinations, an abuse of discretion would be the more appropriate standard. In PTI matters, the focus is on whether there should be prosecution under an indictment, thereby implicating a wide range of considerations that influence a prosecutor's ultimate decision.
[Flagg v. Essex County Prosecutor, 171 N.J. 561, 570-71, 796 A.2d 182 (2002).]
The plaintiff in Flagg had worked for the Department of Sanitation in Newark for nearly thirty years with an unblemished record. Id. at 568, 796 A.2d 182. On September 5, 1996, he was instructed by his supervisor to pick up a load of construction debris from a site not on his regular route and then to dump it on the street two blocks away. Id. at 566, 796 A.2d 182. After complying with his supervisor's instructions, he returned to his regular route. Ibid. Several Newark police officers observed his actions in dumping this waste on the street, and he was charged with the disorderly persons offense of disposing of solid waste on a public street, N.J.S.A. 13:1E-9 .3a and b. *1147 Flagg asserted that he had just been following his supervisor's orders, but he was convicted, the offense being one of strict liability, regardless of intent. Id. at 566, 796 A.2d 182. He was subsequently terminated by the department. Id. at 567, 796 A.2d 182.
Flagg thereafter filed an action in lieu of prerogative writs, seeking to compel the prosecutor to request a waiver of the forfeiture provisions of N.J.S.A. 2C:51-2 or to provide an explanation of his refusal. Ibid. After a hearing, the trial court held that the decision by the prosecutor not to seek a waiver of forfeiture was "an extraordinary abuse of discretion," and it granted a waiver. Id. at 568, 796 A.2d 182. The prosecutor appealed, and this court held that judicial review of a prosecutor's decision not to seek a waiver of forfeiture was limited to the question whether that decision was a "patent and gross abuse of discretion," and we reversed the trial court. Ibid. The Supreme Court, however, disagreed, concluding that the remedial purposes of the waiver of forfeiture provision "can be achieved more effectively under an ordinary abuse of discretion standard." Id. at 571, 796 A.2d 182.
In Flagg, the Court was considering a prosecutor's refusal to seek a waiver of forfeiture, and it was that decision which it said should be reviewed in terms of abuse of discretion. Here, the trial court was confronted with a prosecutor's decision to seek a waiver of forfeiture. Waiver of forfeiture does not follow automatically from a prosecutor's decision to seek such waiver. Rather, it is a judicial function to determine whether a prosecutor has demonstrated the statutorily-required "good cause" to grant waiver. The grant of waiver of forfeiture is not a prosecutorial function; it remains always a judicial one.

C
The trial court's analysis of whether to grant a waiver of forfeiture here, and our subsequent analysis of the trial court's ruling, is hampered by the procedural missteps which occurred below. N.J.S.A. 2C:51-2b(1) provides that an order of forfeiture shall be entered "pursuant to subsection a ... [i]mmediately upon a finding of guilt by the trier of fact. ..." The question of forfeiture, however, was not addressed at all in the municipal court proceedings nor at the trial de novo.
The statute goes on to provide that when "the issue of forfeiture is not raised... at the time of a finding of guilt ... or sentencing ... a forfeiture of public office, position or employment required by this section may be ordered ... upon application of the county prosecutor. ..." N.J.S.A. 2C:51-2g.
Based upon that statute (and perhaps upon the fact that defendant had not sought waiver), the prosecutor's office moved for an order of forfeiture.[3] Defendant opposed the application, contending that the Law Division could not impose a more severe penalty than had the municipal court, that the application was untimely, and that her actions did not demonstrate she was unfit to hold public office. The prosecutor's office submitted a brief asserting that these contentions were immaterial to the question of forfeiture and that a forfeiture order should be entered by the trial court. We note that defendant does not repeat those contentions on appeal.
*1148 Shortly before the hearing on forfeiture, the Attorney General's office advised the prosecutor's office that it had discretion whether to seek forfeiture. Based upon that advice, the prosecutor's office determined that it should seek a waiver. The trial court was understandably perturbed at what it perceived to be an unexplained shift in the position taken by the prosecutor's office on the same factual complex and deemed it an abuse of discretion. Neither party made clear to the trial court the significance of the procedural sequence: that in its first papers, the prosecutor's office was complying with the guidelines issued by the Attorney General, in which case the matter was to be analyzed under the forfeiture statute, while in its second set of papers it was exercising the discretion that the Attorney General had just acknowledged, in which case the matter was to be analyzed under the principles of waiver enunciated in subsection (e) of the statute and in Flagg, supra, 171 N.J. at 579, 796 A.2d 182.
This procedural confusion engendered by the parties does not, however, provide a basis to reverse the trial court's ultimate conclusion. The fundamental question presented was whether good cause existed to waive forfeiture. The trial court correctly concluded that it did not.
In accordance with the Court's directive in Flagg, Id. at 578, 796 A.2d 182, the Attorney General's office promulgated guidelines to assure state-wide uniformity in the handling of waiver of forfeiture applications. Under these guidelines, the factors to be considered are:
1. The totality of the circumstances surrounding the event;
2. The nature of the offense, including its gravity and substantiality, whether it was a single or multiple offense and whether it was continuing or isolated;
3. The quality of moral turpitude or the degree of guilt or culpability, including the employee's reasons, motives and personal gain;
4. The duties of the employee;
5. The relationship between the offense and the duties of the employee, including but not limited to, whether the criminal activity took place during work hours or involved work facilities, contacts, relationships, or equipment;
6. The employee's length of service;
7. The employer's desires;
8. The needs and interests of the victim and society, including consideration of the victim's desires;
9. The extent to which the employee's offense constitutes part of a continuing pattern of anti-social behavior;
10. The employee's prior record of convictions and disciplinary infractions;
11. The threat presented to coworkers or the public if the employee is permitted to retain his or her position;
12. Any involvement of the employee with organized crime;
13. Whether the employee has been granted waiver on a prior occasion;
14. The impact of waiver on the employment status of codefendants as to avoid an injustice if similarly situated culpable individuals are tried in separate trials;
15. Whether waiver of forfeiture of office would undermine public confidence in the integrity of important governmental functions, including but not limited to law enforcement functions; and
16. Nature and scope of cooperation with the prosecuting authorities.
[Attorney General Guidelines for Deciding Whether to Apply for a Waiver of Forfeiture of Public Office Pursuant to N.J.S.A. 2C:51-2(e) 9-10, available at *1149 http://www.state.nj.us/lps/dcj/agguide/ waiverofforfeiture.pdf.]
Defendant had the burden of proof to establish the presence of good cause to warrant a waiver of the forfeiture of her position on the City Council that would otherwise flow from her conviction. Flagg, supra, 171 N.J. at 578, 796 A.2d 182. She did not satisfy that burden.
Both defendant and the State contend that the trial court incorrectly weighed these factors. Defendant complains that the trial court focused in large part on the first three factors, ascribing them much greater weight than the balance. She argues that there is no basis for the trial court to have accorded more weight to one factor than another.
We disagree. We note first that such an approach is explicitly contained in the Attorney General's guidelines, which state "If one factor is so severe, it may outweigh the other factors." Guidelines at 10.
In addition, the judicial process of assessing these waiver factors strikes us as analogous to the judicial assessment of aggravating and mitigating factors that is a critical part of the sentencing process. We have long recognized that a sentencing court need not give these factors equal weight in constructing an appropriate sentence for an offender. State v. Morgan, 196 N.J.Super. 1, 5, 481 A.2d 545 (App. Div.), certif. denied, 99 N.J. 175, 491 A.2d 682 (1984) (citing State v. Roth, 95 N.J. 334, 368, 471 A.2d 370 (1984)).
Much of the trial court's letter opinion is devoted to criticism of the views expressed in the State's papers seeking a waiver, noting how the views set forth in those papers contradicted the views expressed earlier by the State. We confine our analysis to the core issue, whether, considering the Flagg factors,[4] good cause had been demonstrated for a waiver of forfeiture.
Flagg factor 1 and 2 overlap one another; they require a consideration of the totality of the circumstances, the "nature of the offense, including its gravity and substantiality, whether it was a single or multiple offense and whether it was continuing or isolated." Weighing in defendant's favor is the fact that according to the record before us, this was a single and isolated offense. Weighing against her is the characterization of this episode by the Law Division:
I have reviewed the videotape of the incident and the municipal court trial transcript several times. The scene unfolds in an almost excruciatingly slow fashion. The defendant blocks the middle lane of traffic for 7 minutes, refusing to simply move her car into the lane to the right. She repeatedly announces her status, shouts at the officer, follows him, disrupts the scene and leans into her nephew's car, in prolonged conversation in the street.
Flagg factor 3 is "the quality of moral turpitude or the degree of guilt or culpability, including the employee's reasons, motives and personal gain." Although defendant may not have acted to achieve personal gain, and may have been motivated by concern for her nephew, that does not obliterate her clear culpability in this incident. Defendant stresses that the municipal court judge found that defendant acted from concern for her nephew. The Law Division correctly pointed out that the municipal *1150 court judge made additional findings, with which Law Division concurred.
I believe the officer when he says she was repeatedly asked to get out of the way and stop interfering with the officer. She, on numerous occasions, identifies herself as a councilwoman. When, and the Court finds that when it appears she's not getting anywhere she decides I'm not going to deal with these Rutgers cops anymore. I'm Councilwoman Dana Rone, I'm going to call the Newark Police and I'm going to get the Newark Police involved.
And in fact, the Newark police respond immediately. And I think the scene gets very very confused. And I think the scene gets confused because of the actions of the defendant Rone.
Flagg factors 4 and 5 are "the duties of the employee" and the "relationship between the offense and the duties of the employee, including but not limited to, whether the criminal activity took place during work hours or involved work facilities, contacts, relationships, or equipment." We agree with the trial court that there is a close relationship between defendant's position and the offense she committed, turning the balance toward forfeiture.
Flagg factor 6 is the employee's length of service. We concur with the trial court that this factor is entitled to little weight, defendant having held office for only five months at the time of the incident.
Flagg factor 7, the employer's desires, is not relevant. Defendant was an elected official, not a hired one.
Flagg factor 8 is the "needs and interests of the victim and society, including consideration of the victim's desires." The trial court did not make a specific finding with respect to this factor, but rather criticized what it perceived as the State's contradictory positions. To the extent that defendant's actions did cause a diversion of police resources, we think that the impact can fairly be described as minimal.
Flagg factors 9, "[t]he extent to which the employee's offense constitutes part of a continuing pattern of anti-social behavior," and Flagg factor 10, "[t]he employee's prior record of convictions and disciplinary infractions," weigh in defendant's favor. Defendant has no prior history of antisocial behavior or infractions.
Flagg factors 11 through 14 are not relevant to the present matter, nor is Flagg factor 16. Flagg factor 15, however, is significant; indeed, the trial court deemed it the most critical: "[w]hether waiver of forfeiture of office would undermine public confidence in the integrity of important governmental functions, including but not limited to law enforcement functions." We agree with the trial court's conclusions in this regard, that the reasonable interpretation of defendant's actions in interfering with what should have been a routine traffic investigation indicated a view that in light of her position she did not have to comply with lawful, routine police directives. This factor weighs heavily in favor of forfeiture.
The trial court's findings with respect to forfeiture find substantial support within the record, and the trial court's conclusion that there had not been a showing of good cause to grant a waiver of forfeiture was not an abuse of the court's discretion. Its order is thus affirmed.
The judgment of conviction under review in A-5850-07T4 is affirmed, as is the order of forfeiture under review in A-6192-07T4.
NOTES
[1] We note for the sake of completeness that defendant, her nephew, and Officer Wilson are all African-American.
[2] Although the Court held that McCann was not precluded from seeking future office under N.J.S.A. 2C:51-2d, he was precluded under the Faulkner Act, which bars individuals "convicted of a crime or offense involving moral turpitude." N.J.S.A. 40:69A-166. The Court rejected McCann's argument that such a distinction between municipalities operating under the Faulkner Act and those which do not violated his right to equal protection under the law. Id. at 332, 796 A.2d 182.
[3] The guidelines issued by the Attorney General's office after the Court issued its decision in Flagg, supra, provide that a prosecutor should move for forfeiture if an application for a waiver is not received at the time of conviction.
[4] We noted earlier that the Attorney General's office promulgated a set of guidelines to assure uniformity in the treatment of waiver applications. Although these guidelines do not accord completely with the items listed by the Supreme Court in Flagg, supra, 171 N.J. at 579, 796 A.2d 182, the parties refer to them as "Flagg factors." We adopt that terminology for the sake of simplicity.